# Livingston *against* Bell.

When a debtor executes a voluntary deed of assignment of his property in trust for the benefit of his creditors, which, after first directing the absolute payment of certain claims, and then of the claims of certain creditors on condition of their executing a release, provides for the payment of the debts due to all other creditors on the same condition, and for the payment of the surplus, if any, to the debtor himself, such assignment is good and valid.

APPEAL from the circuit court of *Alleghany* county, held in November 1833, before Justice Ross.

The appellant, Thomas Livingston, assignee of Samuel Stevenson, instituted an action of *trover* against William Bell, Jun., John Alexander and Thomas Stevenson the appellees, to recover certain bonds, notes, book accounts and merchandize of the value of 50,000 dollars. The plaintiff claimed the property by virtue of an assignment made to him by Samuel Stevenson under and conformably to the insolvent laws, and dated the 24th of November 1832.

The defendants claimed under the following voluntary deed of assignment.

"This indenture, made this 7th day of August A. D. 1832, between Samuel Stevenson, of the city of Pittsburgh, merchant, of the one part, and William Bell, Jun., John Alexander and Thomas Stevenson of the said city, of the other part. Whereas, the said Samuel Stevenson being indebted to several persons in sundry sums of money which he is at present unable to content and satisfy, hath agreed to assign all his estate, real, personal and mixed, in trust for the benefit of all his creditors, in manner hereinafter mentioned. Now this indenture witnesseth, that the said Samuel Stevenson, for and in consideration of the premises, and of one dollar to him in hand paid by the said William Bell, Jun., John Alexander and Thomas Stevenson, the receipt whereof is hereby acknowledged, doth hereby grant, bargain, sell, assign and transfer unto the said William Bell, Jun., John Alexander and Thomas Stevenson, and to the survivor of them, their heirs and assigns, all and singular the estate, goods, chattels, moneys, credits and effects, merchandize and debts, whatsoever and wheresoever of the said Samuel Stevenson, and all securities had, taken or obtained for the same, and all his right, title and interest of, in and to the same. To have and to hold, take, receive and enjoy the pro-

[Livingston v. Bell.]

perty and estate hereby granted and assigned to the said William Bell, Jun., John Alexander and Thomas Stevenson, their heirs and assigns, and to the survivor of them as aforesaid, upon the special trusts, nevertheless, that they the said William Bell, Jun., John Alexander and Thomas Stevenson shall forthwith take possession and seisin of the premises, and within such convenient time as to them shall seem expedient, by public or private sale for the best price that can be reasonably procured, shall convert all and singular the premises into money, and as soon as possible collect all and singular the debts and sums aforesaid, and shall pay and apply the moneys arising therefrom in the manner following, to wit :

" 1. To pay the expenses and charges attending this assignment and carrying fully into effect the provisions thereof.

" 2. To pay James Gray the amount of the balance due to him for moneys advanced and rent in arrear, according to the award of Isaac Harris under the submission by the said Gray and Stevenson to the said Harris; said Gray also to be credited with the amount of the two last notes due by Stevenson to M. Nesbitt, which said Gray has assumed to pay.

" 3. To pay Reihle and Baynes the amount of a draft drawn by Samuel Stevenson on William Stevenson, and accepted by the latter, for the sum of 1027 dollars.

" 4. To pay all the creditors of the said Samuel Stevenson to whom James Gray may have become liable by acceptance, indorsement, assumption or otherwise, viz.

| Date. 1832. | Kind of Security. | Drawer. | Acceptor. | In whose favour. | Due. | |
|---|---|---|---|---|---|---|
| May 6, | Draft, | S. Stevenson, | J. Gray, | Wm. Bell & Co. | Sept. 6-9, | $657 45 |
| " " | " | " | " | do. | Nov. 6-9, | 657 45 |
| " 1, | " | " | " | H. During, | " 1-4, | 264 97 |
| " 23, | " | " | " | C. Curtis, | Oct. 23-26, | 549 43 |
| " " | " | " | " | Wm. Bell & Co. | Nov. 23-26, | 449 43 |
| " " | " | " | " | do. | Jan. 23-26, | 449 43 |
| " 25, | " | " | " | Martin & Harvey, | do. do. | 624 37 |
| " 23, | " | " | " | C. Curtis, | Oct. 23-26, | 521 21 |
| " " | " | " | " | Wm. Bell & Co. | Jan. 23-26, | 605 87 |
| " " | " | " | " . | C. Curtis, | Feb. 23-26, | 521 21 |

Also, the said Gray's responsibility to James J. Breban,      1189 68
Also,   "   "   "    to Jesse Myers, due,      1170 00
Also,   "   "   "    (two first notes) to M. Nesbitt, ($500)   1000 00

"And if the said James Gray has paid any of the above claims, then to pay him the amount thus paid. Also, in the event of a recovery by Pogue & Co. (of a claim which they assert of responsibility of the said James Gray, for the debt due by the said Stevenson to them of about 580 dollars), from the said James Gray, then to pay the said amount and not otherwise.

" 5. To pay George A. Cook 200 dollars, money borrowed of him by the said Samuel Stevenson.

" 6. To pay all debts due by the said Stevenson for house expenses, clerk hire, &c.

" 7. To pay Campbell, Jones & Opie, for the use of Campbell,

[Livingston v. Bell.]

the amount of debt due them (about 900 dollars), upon condition that said Campbell, Jones & Opie shall release said Stevenson from all debts, &c. due them, and that this payment enure to the benefit of Campbell.

" 8. To pay Bell & Horner any amount actually paid by them or agreed to be paid in purchasing or satisfying any debts of the said Stevenson, at his request, upon their executing a full release of the said Stevenson from all debts, &c.

" 9. To pay the debts contracted by the said Samuel in Philadelphia, for the purchase of merchandize (for which debts promissory notes were given), in May last, to each creditor who shall execute a full release of the said Stevenson, his equal proportion.

" 10. To pay all other creditors of the said Samuel Stevenson, in equal proportions, who will execute, to the said Samuel, a release, acquitting and discharging him from all debts and claims whatsoever on their behalf; such release to be signed on or before the 1st day of November.

"And then : That said William Bell, Jun., John Alexander and Thomas Stevenson, if any surplus shall remain after paying the said several debts, shall pay over the same to the said Samuel Stevenson.

"And I, the said Samuel Stevenson, do hereby make, constitute and appoint the said William Bell, Jun., John Alexander and Thomas Stevenson, and the survivors of them, to be my attorneys irrevocable, to collect the debts and demands due to me, and make sale of the goods and chattels and property, and, in general, all such acts, matters and things for me and in my name to do, as I might or could do were I personally present.

"In testimony whereof, the said parties have hereunto set their hands and seals, the day and year first herein written."

At the time this deed was executed, Samuel Stevenson was indebted in the sum of 30,000 dollars, to wit, 21,000 dollars by bills and notes, and 9000 dollars otherwise. The defendants proved that the directions of the acts of assembly in relation to voluntary assignments had been strictly pursued.

The court charged in favour of the validity of the voluntary deed of assignment, and the jury found accordingly for the defendants.

Predicated upon the tenth and last clauses in that deed, the following, amongst other reasons for a new trial, was assigned by the appellant.

*Fetterman,* for the appellant.

The main question, presented in this case, arises out of the tenth and last provisions or clauses in the voluntary deed of assignment, which, we contend, render the assignment fraudulent and void under the statute of 13 *Eliz. c.* 5. If a part be void, the whole is void. M'Clurg *v.* Lecky, 3 *Penns. Rep.* 86. If by those clauses the surplus had been made payable to the creditors generally, the assign-

[Livingston v. Bell.]

ment would have been good. But as it secures a trust in favour of the assignor himself, its tendency is to defraud creditors, and it therefore comes directly within the meaning of the statute of *Elizabeth.* Such assignments have every where, except in Pennsylvania, been decided to be void. But even here, one and a leading case, bearing a strong analogy to the present, has been decided against their validity. Burd *v.* Lessee of Fitzsimmons et al., 4 *Dall.* 75. In M'Clurg *v.* Lecky, 3 *Penns. Rep.* 91, Justice Rogers went further than the cases there cited could justify. In Wilt *v.* Franklin, 1 *Binn.* 502, the assignment directed the money to be fairly divided amongst all the assignor's creditors, and the surplus, if any, to himself. It was, therefore, very properly sustained, and did just what the bankrupt law would have done. In Lippincott *v.* Barker, 2 *Binn.* 174, the principle contended for by the appellees was doubted by Chief Justice Tilghman; and the question, brought up in the present case, was not before the court. The debtor cannot raise a secret trust for the benefit of himself or family. M'Callister *v.* Marshall, 6 *Binn.* 338; Passmore *v.* Eldridge, 12 *Serg. & Rawle* 198. Such are the authorities in our own state; which, it is conceived, do not establish the principle contended for on the other side. The weight of authorities in other states is decisively against the principle. A debtor cannot prescribe any terms to his creditors. Ingraham *v.* Wheeler, 6 *Conn. Rep.* 277. The property of an insolvent must be held for the equal benefit of all his creditors. Hyslop *v.* Clarke, 14 *Johns.* 458; Seaving *v.* Brinkerhoff, 5 *Johns. Ch.* 332; 2 *Pick.* 129; Austin et al. *v.* Bell, 20 *Johns.* 442; Mackie *v.* Cairns, 1 *Hop. Ch.* 404; Mackie *v.* Cairns, 5 *Cowen* 580; 1 *Edw.* 79; *Ibid.* 451; 5 *Ohio Rep.* 293; 8 *Am. Jurist* 286. In Brashear *v.* West et al., 7 *Peters* 608, and Pierpont *v.* Lord, 4 *Wash.* 232, both parties claimed under a deed of assignment. Ingraham *v.* Geyer, 13 *Mass.* 146.

The court declined hearing *Watts* and *Biddle* for the appellees.

PER CURIAM.—Though it would have been better had these conditional assignments been brought within the purview of the 13 *Eliz.*, as they might have been originally, and, in fact, have been in some of our sister states; it is too late to do so now. They have occurred in countless numbers, and have been sustained when brought before the courts; so that the title to an immense amount of property, perhaps to the value of millions, depends on them; and we should introduce a scene of the wildest confusion, perhaps of mercantile ruin, were we to disturb it. We are required by the argument, in effect, to overturn a train of decisions deeply seated in authority, and introductive of a peculiar rule of property; and whatever considerations of reason or policy might have been presented to this court originally, as inducements to lay the foundations of this part of our jurisprudence differently, it is sufficient that the time for it has gone by, and that we are to administer the justice of the coun-

III.—AA

try according to the laws as we find them.    We therefore think that
a new trial was properly refused.

Judgment affirmed.