# Rahn *against* M'Elrath.

It is not error, that the court neglected to charge the jury in a way not indicated by any specific application of the party.

An assignment of property for the payment of a debt, accompanied by a parol agreement that the residue of the proceeds of the sale of the property, after the payment of the debt, should be returned to the assignor, is not of itself fraudulent: the proper limitation to this, is, that the amount assigned bears a reasonable proportion to the debt provided for; a defect in which, would be evidence of fraud in fact, which however, is not a subject of a legal direction to the jury.

ERROR to the common pleas of *Schuylkill* county.

Thomas M'Elrath against George Rahn and Jacob Oldwine. This was an action of trespass against the defendants, who were the sheriff and his deputy, for taking certain goods and merchandise claimed by the plaintiff.

Jesse M'Elrath, and Henry Stambach were retail merchants, and being about to fail, Henry Stambach made a transfer of all

his interest in the goods and debts due to them to Jesse M'Elrath, who transferred the same to the plaintiff, Thomas M'Elrath, under the circumstances mentioned in the following deposition.

Volney B. Palmer's deposition, taken and filed by the plaintiff, who saith:—That on, or about the 29th of July 1834, said deponent, went with Thomas M'Elrath, to the store of Jesse M'Elrath and Henry Stambach, in the village of Llewellen, in the county of Schuylkill, at which time, and in the presence of this deponent, the said Henry relinquished all claim and interest in the goods and debts of the firm of M'Elrath & Stambach, to said Jesse, and received therefor, a note of Samuel Brooke, payable to the said firm for about 500 dollars, according to the best recollection of this deponent. After this arrangement was executed between the said Jesse, and the said Henry, Thomas M'Elrath made out a statement of money lent to, and paid for Jesse, and of his liability to pay sundry accounts, the payments of which the said Thomas alleged, that he had guaranteed and made himself liable for, to sundry merchants in the city of New York, named in the said statement, for goods purchased and received of them by the said Jesse, which said goods, or the principal part of them, as was represented to me on that occasion, composed the said store, in Llewellen aforesaid, in addition to other goods. The truth and correctness of which statement, the said Jesse then and there admitted, in the presence of this deponent. The gross amount of which, or the amount of the particular items in the said statement he does not recollect, except one, which was the sum of 15 dollars, which the said Thomas paid to the said deponent, for the said Jesse, in consideration of his professional services, in arranging a settlement between the said Jesse, and the said Henry, between whom there had been a disagreement, which was paid to said deponent at the request of the said Jesse, previous to the arrangement with Henry. In consideration of which moneys lent to, and paid for the said Jesse, and the liability and guarantees of the said Thomas as aforesaid, the said Jesse agreed to sell to the said Thomas all the goods in the said store, and to give him an assignment of the books, and all debts due to the said firm, with the understanding and agreement between the said parties, that if the proceeds of the said goods and debts should exceed the amount of the claim of the said Thomas, against the said Jesse as aforesaid, that the said Thomas should refund and pay over the same to the said Jesse when collected, to the full amount of such excess, should there be any.

In pursuance of which agreement, and for the considerations aforesaid, an absolute delivery of the said goods and books was made to the said Thomas, by the said Jesse, and the said Thomas accepted, and took open and absolute possession of the said goods and books, of which the said Thomas then and there took the control and management, and the open and avowed possession, by the

[Galbraith v. Galbraith.]

consent and agreement of the said Jesse as aforesaid, for the consideration aforesaid, in the presence of the said Jesse, and of the said Henry Stambach, and of this deponent. And further, this deponent says, that a woman whose name he did not know, came into the store after the delivery of possession as aforesaid, who wanted some goods on a credit, who was informed by the said Jesse, in the hearing of this deponent, and in his presence, that he, the said Jesse, had no further interest in the said store, and that he had sold out to the said Thomas, to whom the goods then belonged, and whose object and intention was to sell for cash. There were other persons in the store during the negociation, and after the conclusion thereof, who were informed of the sale to the said Thomas aforesaid. And this deponent further says, that he was called upon for advice in relation to this negociation, made between the said Jesse and the said Thomas, and was made acquainted, as this deponent verily believes, with every fact in relation thereto, and there was not to the knowledge of this deponent any disposition to keep it a secret, but on the contrary, was entered into, and concluded in the said store with open doors, persons coming in going out, and was the subject of general conversation.

And this deponent further says, that Mr Morris, (a young gentleman, formerly in the store of Mr Kern, in Pottsville) was employed by the said Thomas, to take charge of the goods and the books, which he did do to the certain knowledge of this deponent, and this deponent further says, that the course pursued by the said Thomas in this transaction with Jesse, was in accordance with the opinion and advice of this deponent, and according to the best of the knowledge and belief of this deponent, was in every respect, fair, open, honourable and legal. And further, upon a cross-examination of the said Volney B. Palmer, by William Silvis, on the part of the defendant, who appeared at the same time and place for that purpose, the following were the questions by Mr Silvis, and answers by the said Volney B. Palmer.

Upon receiving the transfer of the goods and books, Thomas M'Elrath executed the following receipt:

Mr Jesse M'Elrath,

| | To Thomas M'Elrath, | Dr. |
|---|---|---|
| For accepting a draft on Wells, Phillips and Henry Anderson, - - - - - | | $984 00 |
| Guaranteeing debt to Mr Cottrell, - - - | | 40 00 |
| Do. do. B. Peck, - - - | | 41 00 |
| Do. do. M'Elrath & Bangs, - - | | 5 75 |
| Do. do. Shelden & Vail, - - | | 331 40 |
| Do. do. Messrs Titus, - - | | 104 97 |
| American Pottery Company, - - - | | 69 70 |
| Walsh & Mallary, - - - - - | | 61 00 |
| Cash paid lawyer's fees, - - - - | | 15 00 |

VI.—U

| | | | | | |
|---|---|---|---|---|---|
| Travelling expenses, | - | - | - | ⁒ | 27 00 |
| Interest and postage, | - | - | - | - | 4 62 |

$1684 44

Received payment for the above by stock of store goods, which I take into my possession this day.

THOMAS M'ELRATH.

Llewellen, July 30th, 1834.

The above goods will be sold to the best advantage for the benefit of the above debts.

Assignment written in day book.

I, Jesse M'Elrath, for value received do assign all my right, title, and claims of this set of books, to Thomas M'Elrath, of New York, as witness my hand.            JESSE M'ELRATH.

July 30th, 1834.

There was a great deal of parol and written evidence given in the case to establish the allegation of fraud, to vitiate the assignment by Jesse to Thomas M'Elrath, which it is not necessary to detail.

After the testimony had closed, without any prayer for direction, the court (Blythe, president) thus charged the jury:

Charge of the Court.—Whether there was actual fraud on the part of the plaintiff, in purchasing the goods and accounts from his brother Jesse, is a question of fact to be decided by the jury. But the court has been requested to instruct you, that in as much as there was an agreement between the plaintiff and his brother Jesse M'Elrath, that if the goods and accounts transferred by Jesse to the plaintiff, should produce more than sufficient to indemnify the plaintiff for his liability, on account of Jesse, to the persons from whom Jesse had bought the goods in New York, the plaintiff would pay Jesse this surplus, this was in law fraudulent; a fraud *per se*, whether any fraud was actually intended or not.

In answer to this, the court instruct you, that this agreement to return the surplus, should there be any, to Jesse, did not necessarily render the transaction, the transfer of the goods and accounts from Jesse to the plaintiff, fraudulent in law, a fraud *per se*, unless it manifestly appears that the goods and accounts were more than sufficient to indemnify the plaintiff; but if it manifestly appears that the goods and accounts were more than sufficient to indemnify the plaintiff for his liability, the transfer was fraudulent in law, a fraud *per se*, whether any fraud was actually intended or not.

To this charge defendants excepted.

Errors assigned.

1. The court erred in their charge to the jury, in leaving it to them to decide, whether there was actual fraud on the part of the plaintiff in purchasing the goods and accounts from his brother Jesse M'Elrath, without calling their attention to the evidence on that point, when the whole evidence shows conclusively, that it

[Rahn v. M'Elrath.]

was the intention of the plaintiff to defraud the creditors of Jesse M'Elrath, and also shows that the goods and accounts transferred to him, were of more than double the value of his claims against, and liabilities for Jesse. And so the court ought to have told the jury, and that the plaintiff could not recover.

2. The court erred in instructing the jury, that the agreement between the plaintiff and Jesse M'Elrath, to return the surplus, should there be any, to Jesse M'Elrath, did not necessarily render the transfer of the goods and accounts, from Jesse to the plaintiff, fraudulent *per se,* unless it manifestly appeared that the goods and accounts were more than sufficient to indemnify the plaintiff.

*Loeser,* for plaintiff in error.
*Greenough,* for defendant in error.

PER CURIAM.—The ground of the first assignment of error, being an alleged neglect to charge in a way not indicated by any prayer for specific direction, might possibly do for a new trial, but not for a reversal; and the second is without foundation in law. In every assignment for the payment of debts, there is a resulting trust implied from the very nature of the transaction; and it is certainly not an index of fraud to express what the law would imply. Even a creditor excluded from the trust, is not impeded by it longer than is necessary to turn the property into cash; which is sufficient to repel the legal implication of fraud from delay. The proper limitation to this, is, that the amount assigned bear a reasonable proportion to the debt provided for; a defect in which, would be evidence of fraud *in fact,* which, however, is not a subject of legal direction. Now the cause was put to the jury, as if disparity of value would render the assignment void, without regard to actual intention—a direction too favourable to the plaintiff in error, who has consequently no room for complaint here.

Judgment affirmed.