# M'Culloch *against* Hutchinson.

B. being in insolvent circumstances executed to M. an assignment, absolute upon its face, of a stock of goods and delivered possession. Upon proof of an agreement between the parties that M. should sell the goods, and after satisfying a debt due to himself that he should pay the residue to B., the transaction was held to be fraudulent and void.

ERROR to the common pleas of *Alleghany* county.

M'Culloch & M'Donald against Samuel Hutchinson.     Trespass.

The facts of this case are, substantially, these:

Peter Benninger and his brother Robert wishing to establish a store for the sale of dry goods, groceries, &c., in the village of Miller's Eddy, in Armstrong county, purchased from the present plaintiffs a quantity of articles suited to their business amounting in all to about 1100 dollars; and also purchased from Messrs E. A. Brown & Co. dry goods to the amount of about 1000 dollars.

The Benningers opened store in the fall of 1836. · On the 12th of June 1837 they confessed judgment in Armstrong county in favour of Messrs E. A. Brown & Co., for the use of Baird & Huey, for the sum of 449 dollars 81 cents, being the balance due upon the dry goods delivered by the plaintiffs in the judgment to the defendants.

In the month of July 1837 Benninger visited Pittsburgh, and offered to the plaintiffs to sell out the store to them, in consequence of his fear that he would not be able to carry on business much longer; his assortment being broken and the worst part of the stock remaining on hand. This proposition was acceded to by the plaintiffs; and on the 13th of July 1837 a bill of sale was executed by P. Benninger to the plaintiffs.

In pursuance of that bill of sale Mr Lewis and Mr Black, both clerks of the plaintiffs, went to Miller's Eddy and made an inventory of the goods in the store amounting to 504 dollars 99 cents, boxed up the goods, and locking the door of the store returned with the key to Pittsburgh. Lewis afterwards returned and acted as the agent of the plaintiffs in conducting the business of the store. Other articles were added to the old stock by the plaintiffs for the purpose of keeping up the assortment.

In August or September 1837, and whilst Lewis was thus acting for the plaintiffs, an execution was issued upon the judgment in favour of E. A. Brown & Co. to the use of Baird & Huey v. P. & R. Benninger, a levy was made, and a sale had of the goods in the store; the defendant executing the writ as the sheriff of Armstrong county, for which he is now sued.

[M'Culloch v. Hutchinson.]

This bill of sale or assignment, although absolute on its face, without condition, reservation or restriction, is shown to have been executed by Benninger and accepted by the plaintiffs, with an intent inconsistent with the terms of the paper itself.

Peter Benninger testified that at the time the bill of sale was executed, he owed to the plaintiffs a balance of 280 dollars; that in giving the bill of sale it was understood and agreed upon by the plaintiffs and himself, that they were to take the property and the books of the concern, and after paying themselves pay over the excess to him or to his order.

He further stated that when the bill of sale was given he expected to be able to go on after some time in the store himself, after M'Cullough & M'Donald were paid.

James Black, the clerk of the plaintiffs, also testified to the understanding between Benninger and the plaintiffs as to the control given to Benninger over the balance beyond paying the claim of the plaintiffs, and repeats a declaration made by him to Benninger, that "we (plaintiffs) wanted nothing but our own, and that after that was received, that he certainly would get the balance."

The court below (Dallas, President) instructed the jury that the transfer was fraudulent and void, and vested no right to the goods in the plaintiff. Verdict for defendant.

*Shaler*, for plaintiff in error, relied upon 6 *Watts* 151.

*Metcalf* and *Forward*, for defendant in error, cited, 6 *Watts* 249.

The opinion of the Court was delivered by

Sergeant, J.—By the statute of 13 Elizabeth, c. 5, which is in force here, and which has been considered as made in affirmance of the common law, conveyances by debtors to the end, purpose and intent to delay, hinder or defraud creditors in the recovery of their debts, are declared fraudulent and void as against such creditors. The statutes on this subject are liberally expounded for the protection of creditors, and] to meet the schemes and devices by which a fair exterior may be given to that which is in reality collusive. The means may be varied, but the words of the law are general, and embrace them all. A bill of sale by a debtor to one preferred creditor, purporting on its face to be an absolute conveyance of the goods of the debtor at a fixed price, but in reality accompanied with a secret trust that the creditor shall hold and dispose of the goods for the discharge of a debt much less in amount and pay over the balance to the debtor, is manifestly a contrivance by which other creditors may be hindered and prevented in the recovery of their debts. It is the secrecy of this trust, a trust incompatible with that which appears on the face of the transaction, that constitutes its illegality. When the trust openly constitutes a part of a verbal assignment, or is apparent on the face of a written instrument, no harm is done.

[M'Culloch v. Hutchinson.]

The creditor is informed of the nature of the conveyance and of the destination of the property, so that he can with full information avail himself of his legal remedies for a resort to that surplus. No more is effected by a conveyance with such a stipulation on the face of it, than the law would annex without it: and assignments of this description were accordingly held by this court to be legal in the cases of Livingston *v.* Bell, 3 *Watts* 198, and Rahn *v.* M'Elrath, 6 *Watts* 151. But there is another class of cases, where the trust is secret and the creditor liable to be misled and deceived and thrown off his guard, and the debtor enabled to collude with the assignee for the appropriation of the surplus to his private use, without fear from the interposition of the law to compel him to apply it to the payment of his other debts. Passmore *v.* Eldridge, 12 *Serg. & Rawle* 198. A preference may be given by a debtor, though insolvent, to an honest creditor. A sale may be made by such debtor at a specified price. But honesty and fair dealing require that the truth of the transaction should concur with its appearances ; that the whole truth should be developed, and that the transaction should not wear the aspect of a simple sale or preference, and yet in fact be merely a disguise or colour, by means of which the debtor is enabled to enjoy a secret interest in and control over the goods and their proceeds of which other creditors are not informed by the proceeding itself.

It is thus said by Tilghman, C. J.: "there is no intimation on the face of the deed of the reservation of any part for the benefit of the debtor: therefore, if there was any such reservation it was *secret*; at least it was not disclosed in such a manner that the other creditors could come to the knowledge of it by inspection of the writing. In what a situation then are they placed ? If one of them lays an execution on the hides, the deed is produced by which they are protected ; and yet the debtor by this private agreement is entitled to part of them. What is this but a collusion between the debtor and a preferred creditor to protect the property of the debtor from the execution of other creditors ? It falls directly within the words and spirit of the statute of 13 Elizabeth." 12 *Serg. & Rawle* 201.

In the present instance the debtors were insolvent ; and other creditors had obtained judgment against them, when, by an arrangement with the plaintiffs, the debtors made an absolute bill of sale in writing of their store of goods to the plaintiffs to the value of 504 dollars 99 cents, purporting to be in consideration of 350 dollars, and delivered them possession ; but all this was accompanied with a private verbal understanding, that the plaintiffs were to hold them, not as their own, but in order to carry on the store and dispose of the goods, and first pay themselves the amount of the debt due to them, then amounting to but 280 dollars, after receipt of which the balance was to be paid over to the debtors. It was while the goods were thus held under the assignment that the plaintiffs in the judgment issued their execution and sold the goods, on the ground that the

[M'Culloch v. Hutchinson.]

conveyance was in law fraudulent and void : and we are of opinion, that the fact proved in the case, and which is uncontroverted, of the existence of this private arrangement, renders the transaction a fraud *per se*; that it is a conveyance to the end, purpose and intent to hinder and prevent creditors within the words and meaning of the statute of Elizabeth; and that there was no error in the court below charging the jury to that effect.

Judgment affirmed.