May Term,
1860.

McFARLAND
v.
BIRDSALL.

*J. H. Popp,* for the state.

---

## McFARLAND and Others *v.* BIRDSALL and Another.

Where an affidavit for an attachment averred a fraudulent conveyance, an answer traversing the averment is not demurrable.

A reservation of the surplus to an assignor, where it is made to depend upon certain conditions to be complied with by the creditors, and particularly upon the condition of releasing the debtor, will avoid the deed of assignment; but the creditor may be excluded from the benefit of the fund, unless he abide the assignment and await the closing of it, for any balance that may be due him after the fund is exhausted, and the fund may be applied upon claims of other creditors, without rendering the deed fraudulent *per se.*

In the absence of the requirement of a release from the creditor, the mere hypothetical reservation of the surplus to the debtor will not vitiate the assignment.

Where the deed is legal on its face, evidence tending to show that the assignment was an honest transaction is admissible.

Tuesday,
May 29.

APPEAL from the *Fayette* Circuit Court.

DAVISON, J.—The appellants, who were the plaintiffs, brought an action against *Birdsall* and *Thatcher* upon a promissory note for the payment of 1,243 dollars. The note bears date *March* 29, 1856, and was payable to the plaintiffs at six months.

At the commencement of the suit, one *Naham H. Burk,* as agent of the plaintiffs, and on their behalf, filed an affidavit alleging that upon said note there is indorsed two credits, viz., *April* 6, 1857, 500 dollars; *June* 1, 1857, 500 dollars; leaving a balance due thereon of 301 dollars, 86 cents; and that the defendants, *Birdsall* and *Thatcher,*

have sold and conveyed their property subject to execu-
tion, with the fraudulent intent to cheat, hinder, and delay
their creditors.

Upon this affidavit, the plaintiffs having executed a writ-
ten undertaking, as required by the statute, an order of at-
tachment was duly issued against the defendants. And
further, the proper affidavit having been made, a summons
was duly issued against *Benjamin F. Miller* and others,
(naming them) as garnishees.

Defendants answered the complaint, 1. By a general de-
nial; 2. Payment; and in defense of the attachment, they
deny that defendants have sold or conveyed their property
subject to execution, with the fraudulent intent to cheat,
hinder, or delay their creditors, and aver that whatever
disposition has been made of their property, was for the
benefit, and to promote the interest, of said creditors.
This defense is verified by oath.

To the second paragraph, the plaintiffs replied in denial;
and to the answer in defense of the attachment, they filed
a demurrer, which was overruled; but the Court, upon the
plaintiffs' motion, struck out that branch of the answer
which begins with the words, "and aver," and ends with
"said creditors."

The garnishees answered, in effect, that the several de-
mands against them, and in favor of the defendants, had
been, before the commencement of this suit, assigned by
the defendants to one *Benjamin P. Miller*, and that by vir-
tue of that assignment, they, the garnishees, are indebted
to said *Miller*, and not to the defendants.

The issues were submitted to the Court, who found for
the plaintiffs 303 dollars, the balance of the note sued on;
and further, the Court found for the defendants and gar-
nishees in the attachment, and, having refused a new trial,
rendered judgment upon the finding, &c.

The first question to settle relates to the action of the
Court in overruling the demurrer to the answer. There
was no error in this ruling. The pleading to which the
demurrer applied was, in effect, nothing more than a gene-
ral traverse of the fraud charged in the affidavit, which led

to an issue of fact, the affirmative of which the plaintiffs were bound to prove.

Upon the trial, the plaintiffs, in support of the averment that defendants had sold and conveyed their property with a fraudulent intent, &c., gave in evidence a deed of trust executed by defendants to said *Miller*. By this deed, they sold, assigned, and conveyed to *Miller* the entire stock of goods held and owned by them as partners, &c.; also all the notes, books, and book accounts appertaining to their store; and also certain real estate in *Fayette* county (describing it), the separate property of *Birdsall*, one of the partners; to have and to hold to said *Miller*, in trust, to be disposed of as he may deem most expedient, to pay and satisfy, as far as it may, the following notes due and owing by them: Here the deed sets forth and severally describes various notes, amounting, in the aggregate, to 4,764 dollars, and then proceeds: These notes, having been given for borrowed money, are hereby made preference claims, and the assignee is required to pay them, *pro rata*, and if the property so assigned be sufficient to pay them, and leaves a surplus, then such surplus is to be applied in payment of the following notes, which the deed also sets forth and severally describes, and which amount, in the whole, to 4,306 dollars. Appended to the deed, there is a schedule of the notes and accounts assigned to the trustee, amounting to 8,136 dollars. The deed stipulates "that any surplus remaining after the payment of the last-mentioned class of notes, is to be returned to the assignors;" and also contains this provision: "It is understood that, in case any creditor or creditors above named decline taking under this assignment, and wait the closing of the same for any balance that may be coming after the fund is exhausted, such creditor or creditors shall be excluded entirely from the benefits thereof, and all to be then applied to the other creditors abiding the assignment," &c.

The appellants contend that the stipulations just recited render the trust deed fraudulent in law, and this position, it is said, involves the main inquiry in the case.

BURRILL, in his treatise on Assignments, says: "A re-

servation of the surplus to the assignor, where it is made
to depend upon certain conditions to be complied with by
the creditors, and particularly upon the condition of re-
leasing the debtor, will avoid the deed." Bur. on Assign.,
181. This rule, so far as it relates to the release of the
debtor, has been recognized by this Court. *Henderson* v.
*Bliss*, 8 Ind. R. 101.

In this case, however, there is no condition requiring a
release. The creditor, it is true, is excluded from the bene-
fit of the fund unless he abides the assignment, and waits
the closing of it, for any balance that may be due him
after the fund is exhausted; and the fund, in case he fails
to recognize the assignment, is to be all applied to the
other creditors. This condition, it seems to us, ought not
to be allowed to render the deed fraudulent *per se*. It
does not coërce the creditor into a relinquishment of his
demand, nor does it reserve to the debtor the share to
which the creditor would have been entitled had he be-
come a party to the assignment.

Thus, it has been decided that a clause in an assign-
ment authorizing the payment to the assignor of the sur-
plus that might remain after the satisfaction of the debts
of such creditors as should become parties to it, does not
invalidate the assignment, as creditors not parties can pur-
sue their remedies against the debtor, following the sur-
plus either in his hands or those of the trustee. *Conkling*
v. *Carson*, 11 Ill. R. 503.—*Livingston* v. *Bell*, 3 Watts, 198.
—*The Mechanics' Bank* v. *Gorman*, 8 W. and S. 304.—
*Shipwith* v. *Cunningham*, 8 Leigh, 271.—*Phippen* v. *Dur-
ham*, 8 Grattan, 457.—*Halsey* v. *Whitney*, 8 Mason, 206.—
*Brown* v. *Lyon*, 17 Ala. R. 659.—*Dana* v. *The Bank*, 5 W.
and S. 223.—*Bergin* v. *Bergin*, 1 Ired. 453.—*Beck* v. *Bur-
dick*, 1 Paige, 305.

Upon the questions under discussion, the authorities are
not uniform; but the weight of them evidently sustains
the position that, in the absence of the requirement of a
release from the creditor, the mere hypothetical reservation
of the surplus to the debtor, will not vitiate the assign-
ment. Indeed, there are decisions to the effect that such a

reservation is in no case fraudulent *per se*, but only a circumstance from which a jury may infer the intention of the parties. *Estwick* v. *Cailand*, 5 T. R. 420.—*Bergin* v. *Bergin, supra.*

The evidence shows that some three or four of the defendants' creditors, whose claims in the whole amount to 150 dollars, are not named in the deed; and this, it is said, renders the assignment void; but these creditors are not complaining, and, moreover, it was sufficiently proved that their claims were omitted through mistake.

We are of opinion that the trust deed was not fraudulent in law; and whether it was so in fact, was a question for the Court sitting as a jury.

*Benjamin P. Miller*, the assignee, being on the stand as a witness, the defendants, on his cross-examination, propounded to him this question: " State whether, so far as you have any knowledge, information, or belief, the foregoing assignment was *bona fide* or fraudulent; and if fraudulent, what facts are within your knowledge to show it ?"

Plaintiffs objected to the interrogatory thus propounded, on the ground that an answer to it would tend to contradict the deed; but their objection was overruled, and they excepted.

This exception is not well taken. As we have seen, the deed was legal upon its face, and evidence tending to show that, in point of fact, it was an honest transaction, instead of contradicting it, would be consistent with its legal effect. Similar objections were made to like questions propounded to other witnesses, which were correctly overruled.

All the evidence given in the cause is in the record. We have examined it carefully, and, in our opinion, it furnishes no sufficient proof of the fraudulent intent charged in the affidavit.

*Per Curiam.*—The judgment is affirmed with costs.

*B. F. Claypool*, for the appellants.

*S. W. Parker* and *J. C. McIntosh*, for the appellees.