No. 16,205.

HARSEIM ET AL. *v.* BOOTH ET AL.

PREFERENCE OF CREDITORS.—*What Amounts to.— Construction of Instrument.—Bill of Sale.*—A. and B. owned a general stock of merchandise situate in the State of Indiana, each owning a one-half interest in the same. They were indebted in large sums to various persons and firms, and in February, 1891, they executed a written instrument, selling, assigning, and transferring the possession of the goods. The instrument so executed by them stated that they jointly and severally sell, convey, assign, and set over to C., D., E., F. and G., of said county and State, their several and respective interests in the property (describing it), as for the payment of the following indebtedness owing by said A. and B., to wit (the creditors here designated being said C., D., E., F. and G.), delivering the full possession and control of said property, and rights and security for the payment of said debts aforesaid, on the following terms and conditions: The goods to be sold in the usual course of trade, stipulating the manner of sale, keeping account of sales, and retaining out of sales the running expenses. One-half of the net receipts shall be applied to the payment of the debt evidenced by the note executed by A. to C., and one-half to the payment of the note executed by B. to D., and the remaining proceeds shall be so applied that all the other debts named in this writing, and secured, are fully paid, and the residue thereof shall be paid to A. and B., or for their several benefit, as they may direct, reserving the right of exemption.
*Held,* that the instrument was a valid one, constituting a bill of sale, with power to dispose of the property and apply the proceeds to the payment of the debts designated, returning any surplus to the grantors, and constituted such a preference of creditors as the law permits.

From the Hamilton Circuit Court.

*N. Morris, L. Newberger, J. B. Curtis, R. R. Stephenson* and *W. R. Fertig,* for appellants.

*T. J. Kane* and *T. P. Davis,* for appellees.

OLDS, J.—Daniel J. and Elisha Booth owned a stock of general merchandise of the value of from $4,000 to $5,000, situate in the town of Sheridan, in Hamilton county, Indiana, each of said parties owning a one-

half interest in the same. They were at the time indebted to various persons and firms in large sums, and, on the 21st day of February, 1891, they executed a written instrument, selling, assigning and transferring the possession of the goods. The written instrument so executed by them stated that they "jointly and severally sell, convey, assign and set over to Rebecca Booth, Harriet E. Booth, William Booth, Abraham Littleton, and Elbert H. Shirk, of said county and State, their several and respective interests" in the property, describing it, "as for the payment of the following indebtedness owing by said Daniel J. Booth and Elisha Booth, in part several and in part joint, to wit: One note, executed by Daniel J. Booth to Rebecca Booth, on the first of October, 1890, due at one day, for two thousand dollars, with attorney's fees and interest at the rate of eight per cent. per annum. One note, executed by Daniel J. Booth to William Booth, for one hundred dollars and interest; and one note executed by Daniel J. Booth to Abraham Littleton, for one hundred dollars, and this is to secure whatever may be due on said note. One note executed by Elisha Booth to Harriet E. Booth, on the third day of October, 1890, due at one day, for two thousand dollars with attorney's fees and interest at the rate of eight per · cent. per annum; and one note executed by Elisha Booth to William Booth, for two hundred dollars and interest; and, also, one note executed by Booth Bros. to E. H. Shirk, about January, 1891, for two hundred and fifty dollars."

The said Daniel J. Booth and Elisha Booth now deliver to said Rebecca Booth and Harriet Booth the full possession and control of all of said property and rights and security for the payment of said debts aforesaid on the following terms and conditions, that is to say, the said Rebecca Booth and Harriet E. Booth are to proceed

to sell in the usual course of trade, "stipulating the manner of sale, keeping account of sales, and retaining out of the sales the running expenses. And after the payment of expenses, one-half of the receipts shall be applied to payment of said debt evidenced by the note executed by Daniel to Rebecca, and one-half to the payment of the note executed by Elisha to Harriet; and then, when said notes and interest are paid, the remaining proceeds shall be so divided, used and applied until all the other debts named in the writing and secured are fully paid, "and then the residue thereof so divided as aforesaid shall be paid to said Daniel J. Booth and Elisha Booth or any other creditors they or either of them may owe," reserving the right of exemption.

It was further provided in the writing that when said debts specified in the contract had been paid, "the residue shall be delivered one-half to each of the several parties as herein stated, or the proceeds thereof expended for their several benefit as they may respectively direct."

The appellants, who are unsecured creditors of Daniel J. and Elisha Booth, brought this suit to have the assignment declared a voluntary assignment for the benefit of all creditors under the statute providing for voluntary assignments, and to have a receiver appointed to close up the business, and they seek to share *pro rata* in the assets, the assignors being insolvent.

The only question discussed in the case relates to the construction to be given to the written assignment. It being contended, on behalf of counsel for appellants, that .it constitutes a voluntary assignment under the statute, and that no preference can be made in favor of any creditors. While, on the other hand, counsel for appellees contend that it is not a voluntary assignment for the benefit of all creditors, but is an assignment and transfer of

the property of the debtors to secure certain specified and valid indebtedness to the parties named, the surplus arising from the sale of the property above a sum sufficient to pay the same, if any should exist, to be returned to the assignors. This contention arises out of the language of the assignment, and the discussion is based upon the construction to be given to the language used.

It being contended on behalf of the appellants that the language in the contract, where it is stated that, "and then the residue thereof, so divided as aforesaid, shall be paid to said David J. Booth and Elisha Booth or any other creditor they or either of them may owe, reserving, however, to each of them the right to claim and hold their respective and several exemptions," gives to all the creditors of the grantors or assignors an interest in the property transferred, and makes it a general voluntary assignment under the statute, under which no creditor can be preferred.

If this was the only language used in the contract in relation to the surplus, there might be some room for appellants' contention, but the contract further provides, in relation to any surplus, that "the residue shall be delivered one-half to each of the several parties as herein stated, or the proceeds thereof expended for their several benefits as they may respectively direct."

The writing must be construed as a whole, and effect given to each word and portion, if it can be so construed as to do so. When the contract is taken and construed as a whole, it clearly expresses the intent to do so, and does require the surplus over and above the amount necessary to pay the specified debts named, if any surplus should remain, to be turned over, one-half to each of the assignors or to such person or persons as they may respectively direct. The assignors took the stock with the right to sell a sufficient amount to pay the debts named

in the writing, or to sell the whole and apply enough of the proceeds to the payment of said debts as would satisfy them, and the remainder belonged to the assignors, Daniel J. and Elisha Booth, one-half to each. This surplus would be their property, and subject to be applied in payment of the claims of other creditors.

There was no attempt to make an assignment for the benefit of creditors, under the statute authorizing a general assignment for the benefit of creditors, but it was intended to prefer certain creditors and to secure and pay their claims, retaining in themselves any surplus over and above the amount necessary to pay the preferred claims, and this the laws of this State permits to be done. There is no contention but what the claims preferred were valid and just ones.

We are referred to the decisions of the courts of other States, but the question presented is so well settled by the decisions of this court that we must adhere to the rule so settled by our own decisions.

A late case upon the subject is *Hays, Admr.,* v. *Hostetter*, 125 Ind. 60. In that case, Hostetter and his wife conveyed lands to third persons to be sold, and the proceeds to be applied to the payment of certain designated debts of Hostetter. If the proceeds were not sufficient to pay them in full, to apply *pro rata* on said debts, and if any surplus remained after full payment it should be paid to the wife. Hostetter was at the time insolvent, and this court upheld the transfer, holding that it was a transaction not falling within the statute upon the subject of voluntary assignments, but a case where the debtor conveys property to a trustee for the benefit of certain named creditors to the exclusion of others, giving the creditors named a preference over those not named.

The court said: "It has too long been settled in this

State to be controverted now, that a debtor, in failing circumstances, may prefer one creditor to the exclusion of all others.''

It has been so long and so universally held in this State that one may prefer one creditor to another, that he may use his property to pay or to secure an honest debt, though he may at the time owe others equally valid which he leaves unpaid and unsecured, that it would seem unnecessary to cite authority in support of the proposition, and that is all that is done or attempted to be done in this case. In drafting the agreement there is a slight misuse of words; but fairly interpreted, it retains the ownership in any surplus of property, or the proceeds above the amount necessary to pay the debts named in the assignors, one-half in each, with the right on their part to control and direct its application. This surplus, if any, would be liable for the claims of other creditors. *McFarland* v. *Birdsall,* 14 Ind. 126.

In *Dessar* v. *Field,* 99 Ind. 548, it was held that an assignment like the one in the case at bar, made to a creditor of a stock of goods, to be sold and the proceeds applied in payment of a debt due the assignee, and any surplus remaining to be turned over to the assignor, was not an assignment under the statute, but a bill of sale, and not fraudulent in law. These authorities are conclusive of the question presented. The assignment was a valid one, constituting a bill of sale, with power to dispose of the property and apply the proceeds to the payment of the debts designated, returning any surplus to the assignors or grantors in the bill of sale, and constituted but such a preference of creditors as the law permits.

There is no error in the record.

Judgment affirmed, with costs.

Filed April 21, 1893.