## GRIMES V. HILL.

1. WHEN DIRECT QUESTIONS PERMISSIBLE TO A PARTY'S OWN WITNESS. A party may interrogate his own witness by direct questions for the purpose of contradicting previous adverse testimony.

2. EVIDENCE NECESSARY TO DEFEAT TITLE ON GROUND OF FRAUD.— To invalidate a purchaser's title to property on the ground that the purchase was made in fraud of the rights of creditors, it is necessary to prove that the vendor made the conveyance with intent to hinder, cheat or defraud his creditors, and also that the vendee was cognizant of such fraudulent intent in making the purchase.

3. FRAUDULENT INTENT, AND NOTICE THEREOF, MAY BE SHOWN.— These two matters may be proved conjointly or separately, by one witness or many, by direct or by circumstantial evidence. A wide range of evidence is allowable to show fraudulent intent, as well as notice thereof, in such transactions.

4. CIRCUMSTANCES COMPETENT AS EVIDENCE OF FRAUD.— Parties committing such frauds usually seek to conceal the direct and positive evidences of their guilt; and hence resort must generally be had to circumstantial evidence. Circumstances, however slight, relating to the transaction, and tending to throw light upon its character, are competent evidence so far as the same are connected with the parties.

5. DECLARATIONS OF VENDOR AND VENDEE, WHEN ADMISSIBLE.— A party attempting to impeach the validity of a conveyance on the ground of fraud may give in evidence declarations of the vendor or vendee tending to reveal the character of the transaction, when such declarations are shown to have been made either in person or through

the authorized intervention of a third party at or prior to the consummation of the sale.

6. Contradiction of Testimony.— A party, having introduced certain testimony tending to sustain his side of the issue, is precluded from denying the materiality of such testimony for the purpose of preventing its contradiction.

### *Error to Superior Court of Denver.*

William E. Grimes, plaintiff below, brought suit against Zeph T. Hill, alleging that Hill had wrongfully taken and converted to his own use a large amount of personal property (merchandise) belonging to. plaintiff.

The defense relied on at the trial was to the effect that defendant, Hill, as United States marshal, seized the property in execution of a valid judgment in the United States court against one Brasher; and that whatever title Grimes had to the property was obtained by a fraudulent conveyance to him by Brasher, and so was void as against creditors whom the marshal represented.

To sustain this defense Frank Grimes was called, and testified in substance that the original plan was for him and his brother William to take the property as joint purchasers; that, just previous to the conveyance, Brasher had said to witness: "Joe Williams will call on you. He is coming around here to have a talk with you. * * * Brasher told me * * * that he wanted to have a third party speak to me, because I wouldn't have to swear to no lies on the witness stand."

The witness then testified, circumstantially, to a conversation between himself and Williams, in which Williams represented that Brasher was in failing circumstances, and that his business would be closed up the next day; and proposed, in behalf of Brasher, a fictitious and fraudulent sale to the Grimes Bros., to enable Brasher to settle with his creditors, and then that Brasher should have his property and business back again.

The witness further testified that, in pursuance of such proposition, he and his brother entered into negotiations

with Brasher, but that at the last moment he (Frank) refused to have anything to do with the deal. The transfer, however, was immediately consummated with his brother William.

In rebuttal of the testimony given by Frank Grimes, plaintiff called Joseph Williams, whose attention was directed to the time and place of the conversation between himself and Frank Grimes, and he was asked to give his statement of the conversation. Williams' testimony on that subject was quite brief, and of a very different character from that given by Frank Grimes.

When it appeared that Williams could recollect nothing further, counsel for plaintiff proceeded to interrogate him by direct questions as to whether in that conversation he made certain of the damaging statements ascribed to him by the witness Grimes; but the court of its own motion refused to permit such questions to be asked, on the ground stated by the court, as follows: "Mr. Williams has testified to his version of the matter and that ends it. You cannot ask Mr. Williams, 'Did not such a thing occur?' When you have asked him to state all that did occur, that is as far as you can go."

Counsel for plaintiff then offered to prove by the witness Williams that "he did not tell to Frank Grimes that Brasher was in failing circumstances, or that Brasher's establishment would be closed the next day; that he (Williams) did not tell to said Grimes at the place named by said Grimes, or at any time or place, that, if he (Grimes) took or bought the retail business or stock of Brasher, when Brasher had fixed up he could give the stock back to Brasher, and Brasher could go on." This offer was objected to, and the objection was sustained. Plaintiff's counsel duly reserved exceptions to these several rulings of the court, and such rulings are assigned for error.

Mr. LUCIUS P. MARSH, for plaintiff in error.

Mr. JOSEPH N. BAXTER, for defendant in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The plaintiff acquired the property in controversy by a conveyance from one Brasher. Under the issues the burden of showing that the plaintiff's title was fraudulent and void as to the creditors of the vendor rested upon the defendant. To sustain this burden, Frank Grimes was called, and testified to certain statements made to him by one Joseph Williams, as the representative of the vendor, concerning the purposes of the proposed sale. In rebuttal, the plaintiff called said Williams, and by him, as a witness, offered to contradict the testimony of Frank Grimes in certain particulars; but the court refused to allow plaintiff's counsel to propound direct questions to the witness; and finally excluded the offered evidence altogether.

The ground upon which the trial court excluded the evidence sought to be elicited from the witness Joseph Williams was clearly erroneous. The rule is well settled that under certain circumstances a party may interrogate his own witness by direct questions for the purpose of contradicting previous adverse testimony. A familiar example of the rule occurs where a witness has been charged by the testimony of another witness, already given at the trial, with having made certain statements in a former conversation between the two witnesses. In such case the latter witness, after giving his recollection of the conversation as fully as he can, may be asked the direct question whether in such conversation he made the statements, or any of them, imputed to him by the former witness, specifying in the question the substance of such statements. This rule of evidence, and the reasons upon which it is founded, have received thorough consideration by this court. See opinions in *Gilpin v. Gilpin*, 12 Colo. 510, 515, and the authorities there cited.

An effort has been made in this court to sustain the rulings of the court below upon the ground that the testimony of Frank Grimes stating the conversation between himself

and Joseph Williams was not competent evidence; that it was a conversation between parties not finally connected with the actual sale, and hence hearsay; and, further, that, such evidence having been received without objection, the court might in its discretion refuse to allow it to be contradicted. The latter view is not sustained by the record as a matter of fact. Plaintiff's counsel did object, and reserve an exception, to the ruling permitting Frank Grimes to state his conversation with Williams. The objection and exception, however, are not material. The language of the court permitting the testimony to be given, though somewhat suggestive, was not without foundation in the testimony already received. It was as follows: "Mr. Williams, it appears by the testimony, was made the agent of Mr. Brasher to make these declarations." It was certainly within the province of the jury, if they believed the witness Frank Grimes, to find that Brasher expected and had authorized Williams to say something to said witness which, if uttered by Brasher himself, would, in his opinion, militate against him in any controversy which might arise out of the contemplated transaction. The ruling of the court permitting Frank Grimes to state the conversation between himself and Williams was therefore correct, and the evidence thereby admitted was competent and relevant to the issue on trial.

To invalidate the plaintiff's title as a purchaser of the property in controversy, it was necessary to prove that Brasher made the conveyance with intent to hinder, cheat or defraud his creditors, and also that plaintiff was cognizant of such fraudulent intent in making the purchase. It was competent to prove these two matters conjointly or separately, by one witness or many, by direct or by circumstantial evidence. A wide range of evidence is allowable to show fraudulent intent on the part of the vendor, as well as notice thereof to the vendee, in such transactions. Parties committing such frauds usually seek to conceal the di-

rect and positive evidences of their guilt. Hence resort must generally be had to proof of circumstances somewhat remotely connected with the transaction. Circumstances, however slight, relating to the transaction, and tending to throw light upon its character, are competent evidence so far as the same are connected with the parties thereto, respectively. A party attempting to impeach the validity of a conveyance on the ground of fraud may give in evidence declarations of the vendor or vendee tending to reveal the character of the transaction, when such declarations are shown to have been made, either in person or through the authorized intervention of a third party, at or prior to the consummation of the sale. We need not, in this case, consider the question of subsequent declarations. Kerr, Fraud & M. p. 384; Bump, Fraud. Conv. pp. 560–564.

The evidence disclosed that the proposed purchasers were two brothers, Frank and William Grimes. According to the testimony of Frank Grimes, the vendor, Brasher, expressed a desire, shortly before the sale, that he (Frank) should talk with a third party (Williams), so as to avoid the effect of the personal declarations of the parties to the transaction as evidence in a court of justice. Williams talked with Frank Grimes, and proposed, in effect, according to Frank's testimony, that he and his brother William should take charge of the vendor's business and of the property in controversy temporarily under a simulated sale so as to enable the vendor to settle with his creditors. The testimony of Frank Grimes further shows that, immediately after this conversation with Williams, he and his brother William Grimes received from Brasher a substantial confirmation of William's authority. The negotiation proceeded accordingly. It was only at the last moment that Frank Grimes refused to become a party to the transaction, for the reason, among others, as he in effect testified he informed his brother at the time, that the proposed transaction was not politic, and might cause them to lose their

business reputation and standing. The negotiation, however, was immediately consummated with William Grimes, plaintiff in this action.

The defendant, having introduced the testimony concerning the conversation with Williams in support of his side of the issue, was not privileged to deny the materiality of such testimony for the purpose of preventing its contradiction. An offer to contradict in such a case is unlike an offer to introduce irrelevant matters by one party because other irrelevant or improper testimony has been received in behalf of the other party. *Batdorff v. Bank*, 61 Pa. St. 179; *Mitchell v. Sellman*, 5 Md. 376. But we need not rest our decision upon this ground; for, as we have seen, the testimony of Frank Grimes concerning the conversation with Williams was both relevant and material. It tended to show fraudulent intent on the part of the vendor in making the sale; and so it was competent evidence, even though the question of the vendee's alleged complicity in the fraud was left to be determined by other evidence. The weight of the evidence, however, was for the jury, as well as the credibility of the witness; and it was the absolute right of plaintiff to contradict his testimony, if it could be done, by competent evidence properly introduced in rebuttal. It was error, therefore, to exclude the offer of plaintiff to contradict any substantial part of Frank Grimes' testimony by the witness Joseph Williams.

We need not discuss the assignments of error relating to the charge of the court. In the case of *Sutton v. Dana, ante,* p. 98, we had occasion to consider and express our views upon instructions to juries in cases of this kind, and we need not repeat them. The judgment of the superior court is reversed and the cause remanded for a new trial.

*Reversed.*