Reed, J.,
delivered the opinion of the court.
Appellant, as sheriff of Mesa county, levied upon and took possession of certain goods as the property of one J. C. Kennedy, under a writ of attachment sued out at the suit of W. A. Hover & Co.
Appellee (Carpenter), claiming to be the owner of the goods, brought this suit in replevin.
A trial was had upon the title to the goods, resulting in a verdict and judgment for appellee. The evidence was, principally, that of the plaintiff Carpenter and J. C. Kennedjr as to the character of the transaction and the circumstances at the time of the transfer by Kennedy. Such evidence was'very conflicting, the plaintiff testifying that it was an absolute’ purchase in consideration of Kennedy’s indebtedness to him, amounting to over $1,000. Kennedy testified that no consideration passed, and that the conveyance was only in trust to secure the indebtedness; that the business was to be administered by the plaintiff and accounting to be had, and when a sum sufficient to discharge the indebtedness was realized, the remaining stock was to be returned. Had there been no evidence but that of the two persons, the jury would have been at liberty to adopt either and disregard the other; but when it is conflicting it is the duty of the jury to consider all the incidents and circumstances of the transaction that will aid in the solution of the question; in this there were several that were controlling, taken in connection with the principal evidence:
First. The transaction and transfer occurred at night without any preliminary negotiation.
Second. No inventory was taken nor the value of the stock in any way ascertained.
Third. The notes of Kennedy were not due.
Fourth. With the exception of $150 claimed by plaintiff as a payment and by Kennedy as a loan, no consideration whatever passed. The notes of Kennedy evidencing the indebtedness were not canceled nor delivered.
*32 The following evidence given by Kennedy was not disputed by the plaintiff, except the statement that he had agreed to return the goods, etc.
“ Bill of sale was made about 9 P. M. It was first talked. of by witness and Carpenter shortly previous, one half or an hour, perhaps, in the drug store. Carpenter came into the store about 8.30 p. M., angry. About the first thing he said was that he wanted a change, and said that witness was about to be arrested, so he would be taken away from the town and it would lead to the store being closed up. Witness had no clerk at the time, and it would precipitate attachments, and would cause the stock to be frittered away and it would prevent expenses. Witness asked him what he wanted, if he wanted an assignment; said he wanted a bill of sale. Witness said he could not give him that. Carpenter turned around and started toward the door, and told witness that he had better do it or he would make him trouble. Previously he had told him he would attach, and he stepped toward witness and began telling him that it would be the best thing he could do; that he, Carpenter, would keep the store running until these threatened criminal prosecutions were disposed of, and that would be a short time, and he would keep an. account of the receipts and expenditures, and in a short time, and as soon as the prosecutions were disposed of, he would turn the store back to witness.”
Mr. Clayton, the attorney for Hover &' Co., testified that some time after the transaction plaintiff took from the safe and showed him the notes of Kennedy, the bill of sale, etc., “ that Carpenter said he had taken possession of the store in order to get his money out of it.” “He said he would make Hover’s claim good, provided there was enough left after he got his own money.”
Mary E. Kennedy, the sister of J. C., testified that in May, June and July, 1885, she was the agent of her brother, and as agent, and at his instance, in the latter part of June she called upon the plaintiff for a statement in regard to the store *33 and her brother’s affairs, and plaintiff submitted the following:—
“ Store inventoried and sold for . . $1,440.50
Cash received from store . . . . 78.50
$1,519.00
Paid into store for new goods, rent, clerk hire, etc. . .... 221.05
$1,297.95
“ Sheriff attached and took out $500.”
The following letter was put in evidence, was neither disputed nor explained:
“ Grand Junction, Colo., Sept. 16,1889.
“ J. C. Kennedy, Glen wood Springs, Colo.
“ Dear sir: I write you to ask if we cannot agree upon some plan whereby we can settle forever our old matters of 1885. How much will you take to pass receipts in full — that is to say, such papers as will show final and complete settlement between us — I to turn over all of your notes to you, canceled ?
■ Yours,
“ W. T. Carpenter.”
It also appears from the evidence of Kennedy that about six weeks before the conveyance an inventory of the stock was taken, showing its value to have been about $2,250, and that it was as large or larger at the time of the conveyance.
It was also shown that, at the time of the conveyance of the store and the receipt of the $150, Kennedy conveyed to appellee real estate at Grand Junction, Alamosa, Colorado Springs and Denver, which, according to evidence of disinterested witnesses, exceeded in value the entire amount of Kennedy’s indebtedness. There is no evidence of any property remaining in Kennedy. It would seem to have been in contemplation of law an assignment of all of his assets, not for the benefit of all creditors, but in the way of an absolute conveyance for the benefit of one. Leaving out the contra *34 dictory evidence of appellee and Kennedy as to the character of the transfer, as to whether it was bona fide and absolute, or in trust for the grantor — the circumstances, subsequent acts and admissions of appellee, in making a statement, and his letter written three or four years after, together with the evidence of disinterested witnesses, conclusively stamp the transactions as fraudulent as to other creditors, under our statute and the numerous decisions based upon it. Sec. 11 of the Act of Frauds and Perjuries, Gen’l Stat., § 1520, is, “All deeds of gift, all conveyances and all transfers or assignments, verbal or written, of goods, chattels or things in action, made in trust for the use of the person making the same, shall be void as against the creditors existing of such person.”
The question of fraud is not, as supposed by counsel in argument, to be decided by the evidence of the parties in answer to the question of intention to defraud. Such testimony is incompetent. The question of intention is one to be determined from the facts and circumstances of each case. The proper facts having been established, the law fixes the intention, — the intention is to be deduced from the facts and circumstances. If the question of fraud was to be determined by the oath of the parties, it would obviate all necessity of proof of the circumstances attending the transaction. See Hunter v. Ferguson, in this court. (3 Colo. App. 287;) Lloyd v. Fulton, 91 U. S. 485; Humes v. Scruggs, 94 U. S. 22.
No principle of law is better settled than that a secret trust accompanying a sale is a fraud that renders void the contract. In Coburn v. Pickering, 3 N. H. 415, it is said :—
“ When the question is, was there a secret trust, it is a question of fact; but when the fact of a secret trust is admitted, or in any way .established, the fraud is an inference of law which the court is bound to pronounce.”
In Phelps v. Curts, 80 Ill. 112, it was held that, “ It was not important what motives may have animated the parties. If they have so disposed of the property that the necessary *35 effect is to hinder and delay creditors, such a disposition is, in judgment of law, a legal fraud. ” See also Emerson v. Bemis, 69 Ill. 537; Power v. Alston, 93 Ill. 587.
It is urged by counsel that instructions 13 and 14, asked by appellant, should have been given, and that the refusal was error. I cannot agree with this contention. They were to the effect that, if the jury believed the sale was not absolute but made as security for the indebtedness, the transaction was void. They were correct, but the same thing is clearly and fully expressed in the instructions given. That portion of the instruction which says: “ But if, on the other hand, you believe and find from the evidence that, on the 3d day of June, 1885, J. C. Kennedy was 'owing the plaintiff Carpenter a large sum of money, and that the parties upon said day agreed that said property should be transferred to said Carpenter in the payment and liquidation of said indebtedness, and in pursuance thereof said bill of sale was given with the possession of said property as a complete payment of said indebtedness, the W. A. Hover & Co.’s attachment would not prevail even though said Carpenter may have known that J. C. Kennedy was largely in debt and that he was preferred to the other creditors,” was erroneous and should not have been given. It was at variance with the evidence of the plaintiff and his admissions by his letter, no notes or securities were given up which should have been if the assumed position had been true, nor were the notes ever delivered up as the consideration for the alleged purchase. Instructions at variance with the evidence or not warranted by it are faulty. But the reversal of the case is not based upon this instruction as no objection appears to have been made or exception taken. Attention is called to it to prevent a repetition of the error upon a new trial. Disregarding the evidence of Kennedy when in conflict with that of the plaintiff, the remaining evidence was sufficient and clearly establishes the fraud in law. The case as made comes clearly within the second resolution in Twyne's Case, 3 Coke, 80, in construing Statutes 13th Eliz., chap. 5, and 27 Eliz., chap. 4, *36 from which our statute is taken, “ Any sale or transfer made by a person in debt, in order to be regarded as bona fide and valid against his creditors, must be made without the reservation of a trust for the grantor, either open or concealed.” 1 Smith’s Leading Cases, 321; Towle v. Holt, 14 N. H. 61; Coolidge v. Melvin, 42 N. H. 210; Mackason’s App., 42 Pa. St. 330; Allain v. Day, 30 N. J. Eq. 231.
That sales, transfers or assignments of personal property or choses in action, made with fraudulent intent against creditors, are equally invalid as conveyances of real estate. See 1 Smith’s Lead. Cases, 33; Drake v. Rice, 130 Mass. 410; Beckwith v. Burrough, 14 R. I. 366; Cooke v. Cooke, 43 Md. 522.
The verdict of the jury being so clearly against the preponderance of the evidence and against the instructions of the court, and the court having erred in the instruction as noticed above, the judgment will be reversed and cause remanded for a new trial.

Reversed.