WILSON v. THE AMERICAN NATIONAL BANK OF PUEBLO.

1. STATUTE OF FRAUDS—TRUSTS.

Conveyances, assignments, etc., made in trust for the use of the person
making the same are void as against the existing creditors of such
person, and it is unimportant whether the reservation is contained
in the instrument of transfer or rests in parol.

2. SAME.

The object of the eleventh section of the statute of frauds is to invali-
date transfers of personal property which have the effect of placing
it beyond the reach of creditors of the person making the transfer,
but which leave a beneficial use, control or ownership in him.

*Appeal from the District Court of Arapahoe County.*

Messrs. LAWS & PRESCOTT, for appellant.

Messrs. ROGERS, CUTHBERT & ELLIS and Mr. FRANK L.
WOODWARD, for appellee.

THOMSON, J., delivered the opinion of the court.

On the 25th day of January, 1893, the appellant brought
suit against W. R. Gregg for $585.83, due on account.  A
writ of attachment was issued, and process in garnishment
served upon certain debtors of Gregg, who thereupon an-
swered, admitting their indebtedness to him.  On the 27th
day of February, 1893, the appellee filed its petition in inter-
vention in the cause, alleging that it was the owner of the
debts attached, by virtue of an assignment to it for a valuable
consideration, made by Gregg on the 24th day of January,
1893, of all his book accounts and bills receivable, among
which were the debts above mentioned, and praying an order
upon the garnishees for the payment to the intervenor of the
moneys for which they had answered they were indebted.

It appears from the evidence that, on January 24th, Gregg
owed the intervenor about $11,000 ; and that, in the evening

of that day, the bank interviewed Mr. Gregg upon the subject of an adjustment of the indebtedness. He professed himself unable to do anything except to transfer his book accounts. The following instrument was then executed:

" PUEBLO, COLORADO, January 24, 1892.

" For value received, I hereby assign, transfer, and set over to The American National Bank of Pueblo, all book accounts and bills receivable, due and owing to me at Pueblo, Bessemer, and Denver, growing out of my business at those places as a dealer in coal, and I hereby authorize the said bank to take possession of my books of account, and collect the said accounts.

" W. R. GREGG."

The bank, upon investigation, found that the accounts were insufficient, and immediately instituted legal proceedings for the recovery of the debt, which afterwards resulted in the collection of the amount of its claim, except about $4,000.

Upon the hypothesis that the accounts were assigned as security for the debt, counsel contend that the transaction was void by virtue of section 11 of the statute of frauds, which reads as follows: "All deeds of gift, all conveyances, and all transfers or assignments, verbal or written, of goods, chattels or things in action, made in trust for the use of the person making the same, shall be void, as against the creditors existing of such person." General Statutes, sec. 1520. They lay down the general and comprehensive proposition that a sale, absolute on its face, but in reality given for the purpose of securing a past indebtedness, is equivalent to a reservation of a trust for the use of the vendor, and is therefore within the statute, citing *Hill v. Rutledge*, 83 Ala. 162; *McDermott v. Eborn*, 90 Ala. 258; *Newell v. Wagness*, 1 N. Dak. 62; *Innis v. Carpenter*, 4 Colo. App. 30.

We shall give some attention to these cases after we have considered the purpose and effect of the statute itself. Its object, as appears upon its face, is to invalidate transfers of

personal property, which have the effect of placing it beyond
the reach of creditors of the person making the transfer,
but which at the same time leave a beneficial use, or control,
or ownership in him.   It is unimportant whether the reser-
vation of the use is contained in the instrument of transfer,
or rests in parol.   In either case the transaction is void as
against creditors.   It is the fact that property is actually
conveyed in trust for the use of the person making the con-
veyance, whether the declaration of trust is open or secret,
—expressed in the conveyance, or the subject of a private
understanding,—which enables creditors to avoid the trans-
fer.   There may be no active intention to hinder, delay or
defraud creditors, but there must be an intent that some
benefit *in* the property, or proceeding *from* it, shall remain
in the vendor.   The trust for his use must be created by
contract.

In *Curtis v. Leavitt*, 15 N. Y. 9, a case in which this stat-
ute was the subject of discussion, commencing at page 121,
the court said : " What then is the true meaning of the stat-
ute ?   It declares that ' all deeds of gift, all conveyances, all
transfers or assignments, verbal or written, of goods, chattels,
or things in action, made in trust for the use of the person
making the same, shall be void as against creditors, existing
or subsequent, of such person.'   All reasoning and all au-
thority, as we have seen, concur in the conclusion that it has
no application to cases of real and actual alienation upon
valuable consideration and for active and real purposes,
although incidental benefits are reserved to the grantor.
There is but one other possible interpretation, and that is
the one to which the language itself points.   It is the deed,
etc., to the use of the grantor, which is void, and not the
deed to other uses and for other objects.   Its true name
should be a statute of personal uses.   Its object is to render
simply ineffectual, purely nominal transfers of personal estate
where the entire use and control are, by a declaration of trust
in or out of the instrument, left in him who makes the
transfer."

In *Campbell v. C. C. & I. Co.*, 9 Colo. 60, Helm, J., after quoting the statute, said: " The intent with which the transaction is had governs the application of this provision. Similar statutes have been held to include only those cases where the use or the trust for the benefit of the grantor was the principal purpose accomplished by the conveyance; but where such benefit was merely an incident, the main purpose and effect of the instrument being lawful, the application of the statute, save possibly as to such incidental use or benefit, has been denied."

A transfer, purporting to be an absolute sale, but actually made to secure an indebtedness, may be obnoxious to the statute; but there must be some purpose in the transaction other than merely securing the debt. There must be a use, or control, or benefit in the property, reserved to the vendor after the debt is paid. Subject to the payment of his claim, the vendee must hold the property to the use of the vendor. In such case it is immaterial whether the claim is for a past indebtedness, or for one then created. It is the fact that the use condemned by the statute is reserved that is fatal to the conveyance.

We shall now see how far the authorities cited by counsel sustain them in the sweeping statement that any ostensibly absolute conveyance or assignment, the real purpose of which is to secure a past debt, is void.

In *Hill v. Rutledge*, Blacock executed a bill of sale to Rutledge of his entire crop of cotton, corn, peas, fodder and potatoes. The evidence was that the bill of sale was given to secure a preëxisting debt from Blacock to Rutledge, and for the further purpose of securing advances already made, and to be made by Rutledge to Blacock; and that Blacock was financially embarrassed and insolvent at the time and Rutledge had knowledge of that fact. There were two prominent features of this transaction in addition to that of security. *First*, the conveyance of the whole property was not necessary for the security of the debt owing to Rutledge. It was by outside parol agreement made the basis of future advances from

him to Blacock. *Second*, Blacock was insolvent to the knowledge of Rutledge. Property, therefore, which should have been available to creditors of Blacock was covered up in Rutledge's name. The court seemed to attach considerable importance to the insolvency of Blacock; but we think that, without that feature, the case was within the statute, because such portion of the property conveyed as was unnecessary for Rutledge's security, and on account of which Blacock was to receive advances, was unquestionably held by Rutledge in trust for Blacock's use.

The facts upon which *McDermott v. Eborn* was decided we shall give in the language of the judge delivering the opinion: "The transfer of the grantor's stock of merchandise made to the Jefferson County Savings Bank by Eborn, on June 7th, 1886, was in form a bill of sale; but the evidence clearly shows that it was intended as a security for a debt of $1,500, and it was, therefore, but a mortgage. There is no controversy on this point. The mortgagor was permitted to remain in possession of the goods for over three months, and to daily sell and appropriate the proceeds of sale to his own use. The evidence satisfies us, moreover, that there was an implied agreement to keep the matter secret, and not register the mortgage upon the public records." Upon this state of facts the court held that the transfer was made in trust for the use of Eborn. Comment upon this decision is needless.

The facts in *Newell v. Wagness* were these: T. T. Lee owed Newell & Co. an unsecured debt of $2,959.07. He was indebted to the Merchants' National Bank of Devil's Lake in the sum of $2,486.04, which was secured by mortgage upon his homestead. His homestead was by law exempt from execution, and therefore could not be reached by his general creditors.

He made a bill of sale of his entire stock of merchandise, his safe, store fixtures, book accounts and bills receivable to Newell & Co. The transaction purported to be an absolute sale; but it was orally and privately agreed between him

and Newell & Co. that the property should be received by them as security for their debt, and, further, that they would convert the property into cash, and, after paying their own claim, pay the mortgage of the bank upon the homestead, turning over what was left, after making these payments, to Lee. The cash value of the stock of merchandise and fixtures on the day of the transaction was $2,700, and the cash value of the book accounts and bills receivable, $6,000. Lee was insolvent, and was being pressed for payment by various creditors, which facts were well known to Newell & Co. at the time they took the property; and it was also known to them that the property upon which the bank held its mortgage was Lee's homestead. The court held that the secret trust vitiated the sale. And why not? Here was a transfer of property worth $8,700 in cash to secure a debt of $2,959.07, with a private agreement that after paying this amount out of the proceeds, the residue, amounting to over $5,700, should be devoted to Lee's personal use;—part of it to be applied in the satisfaction of a mortgage upon his homestead, which would then be unincumbered property, and beyond the power of his creditors to touch; and the remaining part to be given to him in cash.

We now come to the case of *Innis v. Carpenter*, upon the decision in which counsel seem to place their chief reliance, and between which and the case at bar they think they find a similarity amounting to parallelism. Let us see what were the distinguishing features of that case. J. C. Kennedy owed Carpenter something over $1,000 upon notes which were not due, and conveyed to him a stock of goods in his store, and certain real estate, receiving from Carpenter $150 in money when the conveyance was made. A portion of the goods were attached by Hover & Co., creditors of Kennedy. Carpenter testified that the transaction was an absolute sale, and that the $150 was part of the consideration. Kennedy testified that this money was an additional loan, that the conveyance was in trust to secure his indebtedness to Carpenter, and that there was a parol agreement

between them that Carpenter should take charge of the store, manage the business, keep an account of receipts and expenditures, and when a sum sufficient to discharge the indebtedness was realized, turn the store back to Kennedy. There were other facts and circumstances in the case which made it conclusive that the transfer was not intended to be absolute, and that the version of Kennedy was the true one. It further appeared that the conveyance embraced all the property owned by Kennedy. Referring to this, Reed, J., said: "It would seem to have been, in contemplation of law, an assignment of all his assets, not for the benefit of all creditors, but, in the way of an absolute conveyance, for the benefit of one." It was also established that the real estate alone which was conveyed exceeded in value the entire amount of the indebtedness. There was no evidence of the value of the stock of goods; but a statement subsequently procured from Carpenter by a sister of Kennedy showed sales of these goods to the net amount of $1,267.95. What became of the accounts and bills receivable did not appear. An instruction to the effect that if the jury believed the sale was not absolute, but was made as security for the indebtedness, the transaction was void, was held to be correct. The expression of the court in reference to this instruction is the only one in the entire opinion which has even an appearance of sustaining counsel's proposition. But, examining it carefully, we find no such doctrine in it. It does not say that any sale, apparently absolute, but intended only as security, is void as to creditors. Its effect is that if this particular sale was not absolute, but was made as a security for this particular indebtedness, the transaction was void. It was therefore, as a declaration of law, by its terms, applicable only to the facts of the case on trial, and was not, and was not intended to be, a statement of a general principle. If it were such it would be incorrect, because it would declare such a transaction void, without qualification; whereas it would be void, if void at all, only as to existing creditors. That transaction being, upon the facts of that case, void as

to the attaching creditors, it was void for all the purposes of the case; and the significant omission of the statutory qualification would confine the effect of the instruction to the particular case in which it was given, even if its general language did not explicitly so confine it.

Now what appearance do the facts of that case present? The store alone was regarded by the parties as more than sufficient to pay the indebtedness. The agreement was to restore it to Kennedy when Carpenter should realize the amount of the debt from sales of the goods. After he had made sales to the amount shown in the statement, there were still goods for Hover & Co. to attach. What the amount of their claim was, and what was the value of the goods attached, we do not know; but from the entire case it seems quite clear that the value of the whole stock was considerably in excess of the amount owing to Carpenter. Then, besides the goods, Carpenter took a conveyance of real estate, which of itself was worth more than all that Kennedy owed him. Kennedy denuded himself of his entire property, and placed everything he had beyond the reach of his creditors. A large proportion of the property was unnecessary for any purpose of security, and by the conveyance was simply covered up in the name of Carpenter. It was upon these facts that this court held the transfer of the goods to be in trust for the use of Kennedy, and therefore void as to creditors. In this, as in every case to which we have been referred, where it was held that an absolute sale, made as security for a debt, was within the statute, the transfer embraced property which the professed object of the transaction did not require, and which, being unnecessary for purposes of security, and by reason of the transfer, unavailable to creditors, was necessarily in the vendee's hands solely for the use of the vendor.

The opinion in *Newell v. Wagness, supra,* contains the following statement of the principle, quoted from *McCullock v. Hutchinson,* 7 Watts, 434: " A bill of sale by a debtor to one preferred creditor, purporting on its face to be an absolute conveyance of the goods of the debtor at a fixed price, but in

reality accompanied with a secret trust that the creditor shall hold and dispose of the goods for the discharge of a debt *much less in amount*, and pay over the balance to the debtor, is manifestly a contrivance by which other creditors may be hindered and prevented in the recovery of their debts. It is the secrecy of this trust—a trust incompatible with that which appears on the face of the transaction—that constitutes its illegality."

The character of the transaction which is the subject of this controversy can be gathered only from the instrument of assignment, and the circumstances attending its execution. Gregg was largely indebted to the bank. The bank wanted the debt paid or secured, and so notified Gregg. The result was the assignment of the accounts and bills receivable, with authority to collect them. There was no express agreement to account to Gregg for any of the money after it might be collected. The evidence does not show what the accounts aggregated, or what proportion of them was collectible, and what not; but it distinctly appears that on their face they were insufficient to satisfy the demand. How far they fell short was not shown. The facts of the transaction imply an agreement on the part of the bank to collect the accounts, and apply the money realized, as far as it would go, in payment of the debt. There was then a transfer of the accounts, absolute in form, the money collected upon them to be received by the bank in payment, *pro tanto*, of its claim. This implied agreement was the only agreement in connection with the transaction, outside of what is expressed in the instrument of assignment itself. Now, it does not matter much whether we call this an absolute sale, or an assignment for security. Its practical effect is the same, whatever technical name we may give it. The accounts would not pay the debt, even if they were all collected. There could be no surplus to return to Gregg, and there was therefore nothing which could be the subject of a trust for his use. There was no express agreement, and the facts imply none, which could bring the transaction within the statute upon any construc-

tion of which it appears to us to be susceptible, or which has been given to it in any case within our knowledge.

It is true that the bank afterwards instituted legal proceedings, by means of which it realized out of other property of Gregg sufficient money to reduce its demand to $4,000; but neither this nor anything else which occurred after the transaction was completed, affected, or could affect, its character. Furthermore, for aught that appears, the accounts were insufficient, or were not more than sufficient, to satisfy this balance. As to that matter we can presume nothing. The fact that the bank was able to realize money from its suit has some value as showing that Gregg was possessed of property outside of the accounts and bills receivable, which was available to creditors. Upon the facts of this case, as they are disclosed by the record, the assignment by Gregg to the bank was valid, and gave the bank the right to collect the debts assigned, and apply the money upon its demand against Gregg.

The judgment will be affirmed.

*Affirmed.*