Bissell, P. J.
Trenoweth was engaged in the mercantile business in Georgetown and Central City, Colorado, for some years, but became embarrassed about the middle of 1896. He was then indebted to the Rocky Mountain National Bank of Central City, of which Mr. Potter was the representative, as well as to divers other parties in the vicinity, and to some foreign creditors. Being pressed by his creditors he entered into-negotiations with Potter with reference to the sale of the property, in order to settle the notes held by the bank and sundry notes which were outstanding and due to certain other parties who need not be named. The result of the negotiations was a transfer of the stock to Mr. Potter on definite terms which were the surrender of the notes holden by the bank and the payment of certain other claims, which with interest at the time of the final settlement amounted to a little less than $15,000. The transaction was concluded by a bell of sale reciting as a consideration $13,350, and the transfer of the stock of goods theretofore owned and held by Trenoweth. This occurred in July, 1896, and Potter went into possession. He carried on the business for a while and ultimately sold the entire stock out and paid the consideration which the parties had agreed on. He surrendered the notes held by the bank to Trenoweth, and as the money came in he paid the other paper, until at the time of the trial none of it which he had agreed to pay was outstanding, but all had been settled. Before the affair had been entirely wound up, the plaintiffs in error, Brown Brothers & Company, brought suit against Trenoweth, issued writs of attachment, ultimately ob *514 tained judgment, and in the course of the proceedings served process of garnishment on Potter or the bank, there being no difference in fact as Potter acted simply as its representative. To the garnishment process Potter answered in the negative that he held nothing and owed nothing to Trenoweth. On the issue formed by the answer of the garnishee and a traverse, a trial was had, and on the completion of the testimony, the court directed a verdict for the defendant, and from the judgment entered thereon Brown Brothers & Company prosecute this writ of error.
The record presents no questions of difficulty or importance which, on the premise we will adopt as the structure on which to rest the decision, have not been entirely settled by adjudication in this jurisdiction. Our major premise is, that in reality the whole case turns on what the record shows was the transaction between Trenoweth and Potter. We are entirely satisfied with respect to the significance and force of the testimony, its weight and preponderance, and in no wise disagree with the trial court which concluded thereon that Brown Brothers & Company had no cause of action or right to recover as against Potter. Counsel in their arguments have treated the transaction between Potter and Trenoweth as one of mortgage and security, whereas, in fact, according to the evidence, it was an absolute sale and transfer for a definite consideration which was ultimately paid, and was made, so far as we can discover in good faith and for the purpose of paying the debts due the Rocky Mountain National Bank and certain other specified creditors. The plaintiffs in error complain of the direction of the court to the jury to find a verdict for the defendants, but the practice has been well settled by both appellate courts. When we conclude, as we do, that the court reached a correct conclusion respecting the testimony, it was both his right and his duty to direct a verdict because it was a case wherein if a verdict had been rendered otherwise, it must have been set aside as against the testimony. Under these circumstances, the duty of the trial court is exceedingly plain. Tripp v. Fiske, 4 Colo. 24; *515 Guldager v. Rockwell, 14 Colo. 459; Burlington R. Co. v. Budin, 6 Colo. App. 275; U. P. R. Co. v. Sternberg, 13 Colo. 141; Stratton v. U. P. R. Co., 7 Colo. App. 126.
Starting with this conclusion respecting the facts and. the accuracy of the court’s direction to the jury little remains to be determined. Counsel complain of the ruling of the court on the introduction of testimony produced under interrogatories propounded to Potter and Trenoweth to ascertain whether the transfer was made with the intent to hinder, delay and defraud creditors. We may concede, though we have not bestowed the labor necessary to an examination of the question, that in the light of the authorities it may be debatable. Authorities may be found on the other side of it, but in this court the correctness of the inquiry is settled by an adjudication directly in point which of course we shall follow until it is directly overruled by some tribunal having the authority to settle it adversely to our determination. This question received an examination at the hands of this court in the case of Love v. Tomlison, 1 Colo. App. 516. Therein following New York, Massachusetts, Vermont and many other states, we held the inquiry entirely proper and the evidence legitimate.' The ruling of the trial court was in accordance therewith and may not therefore be overruled.
It is equally clear the court committed no error in refusing to admit the declarations and letters of Trenoweth, made either to Brown Brothers & Company or their representative long after the transaction. This question has likewise been determined adversely to the contention by the supreme court of the state in cases which Avere not exactly similar in their character, but to which the same principle is applicable. Knox et al. v. McFarran, 4 Colo. 586; Chamberlin et al. v. Gilman, 10 Colo. 95.
A strenuous effort is made to apply the case of Innis v. Carpenter, 4 Colo. App. 30, on the theory that the decision in that case is applicable to the present, and that since there was a secret trust reserved and to result to the vendor Trenoweth, the transaction is of necessity fraudulent, and its char *516 acter is such as to bring it within the scope and force of our statute which forbids such transfers and conveyances and renders them void wherever there is a secret trust reserved for the benefit of the vendor. We do not regard that case as applicable when we hold as we do that there is no evidence in the case to show anything other than a simple sale wherein no benefit was reserved to the vendor. In point of fact there is nothing in the record to demonstrate, or which even tends to demonstrate, that Trenoweth was to derive any other or subsequent advantage, but so far as we can discover it is a plain case of a transfer of stock, the sale of it to Potter on an express consideration, which was the debt due the Rocky Mountain National Bank and the debts due certain other designated creditors which Potter paid in accordance with the agreement. There was no reservation of any benefit, right or interest to Trenoweth, either by the terms of the written instrument or by any parol arrangement between the parties, nor was there any reservation which as a matter of law would inure to Trenoweth’s benefit. Campbell v. The Colorado C. & I. Co., 9 Colo. 60.
Under these circumstances, it is wholly unnecessary to discuss or determine when and under what circumstances the vendor in such a transaction may derive a benefit, nor when a reservation, either secret or open, would in any wise tend to void or defeat the transaction. It was apparently, so far as we can see from the record, a not unusual, but on the other hand quite a common transaction, where a debtor sees fit to transfer his property and pay some creditors in preference to others. That the transaction is wholly free from fraud is without question. We are unable to discover any element of fraud or irregularity in this particular transaction.
Since there is nothing in the methods adopted to carry out the scheme which is questionable, and the sale cannot be attacked on the ground of fraud, there is only one other matter suggested by the plaintiffs in error which need be adverted to, and winch, as we think, is equally groundless. This is *517 the question of their right to proceed by way of garnishment to reach the surplus funds remaining after the satisfaction of those debts and have them applied to the liquidation of Brown Brothers & Company’s claim. ' There are two answers to the contention. The first is, it was an absolute sale, so that there could have been no surplus, and the second is, that under the evidence there was in no event a surplus, but it took the entire proceeds of the stock of goods as they were ultimately closed out to pay the debts for which the transfer was made.
As we look at the record this disposes of all the matters which if found for the plaintiffs in error might be sufficient to overturn the judgment, and, since they are all resolved against them, the judgment must necessarily be affirmed, which is accordingly done.

Affirmed.