[No. 5327.]
[No. 2968 C. A.]

### HELM v. BREWSTER ET AL.

1. **Fraudulent Conveyances — Husband and Wife — Burden of Proof.**

In an action by the creditor of a husband to set aside a conveyance to the wife, the husband and wife are required to clearly establish that the transaction was honest, and that there

was no intent to thereby hinder and defraud such creditor; the reason for the rule being that such relationship affords excellent opportunities for the former to thereby defraud his creditors. —P. 33.

2.  Same—Consideration—Fraudulent Intent—Evidence.

A sale of property, though for a full consideration, made by the owner with intent to hinder, delay, or defraud his creditors, is, if the vendee participated in such intent, void as against such creditors; and such intent may be inferred from facts and circumstances.—P. 34.

3.  Same.

A husband, while greatly embarrassed by indebtedness, including that to plaintiff for borrowed money, transferred an apartment building and the furniture used in conducting a boarding house, to his wife. The latter knew that he was greatly embarrassed and his remaining property so heavily incumbered that his equities were of little or no value. The only business the husband was engaged in was that of keeping the boarding house; and, by transferring the building and furniture, his creditors, other than those having liens thereon, were temporarily prevented from reaching the property; and thereby, the name of the manager being changed from the husband to the wife, the business could be continued the same as before. Prior to the transfer, the husband supported the family from the income from the boarding house, and after the transfer the wife supported the family from the same source; and certain money, which the wife testified she borrowed to pay her husband for his equity in the building, was immediately applied by him in the discharge of taxes against the property which she had agreed to pay in part consideration for the transfer. Held, that the transfer was fraudulent as against the husband's creditors.—P. 36.

4.  Same—Alleged Sale Set Aside—Rights of Vendee Wife.

Where a wife participated in her husband's fraud in accepting the conveyance of property to hinder and delay his creditors, she is not entitled as against them to any rights in the property by virtue of the consideration actually paid to her husband, the loss of the amount paid by her being the penalty for engaging in such fraudulent transaction; for to protect the grantee under such circumstances would be to remove all danger of loss, and thereby destroy the salutary restraint which the law has built up against such transactions.—P. 37.

5.  Same—Securing Bona Fide Indebtedness.

A husband may secure an indebtedness to his wife the same as to any other creditors, and bona fide transactions between

them will be upheld; but when they are not bona fide, they will be avoided at the instance of his creditors.—P. 38.

6. **Fraudulent Conveyances — Husband and Wife — Adding to Property—Setting Aside Sale.**

Where a husband conveyed a boarding house and the furniture therein to his wife, with intent to defraud his creditors, of which fact she had knowledge, she acquired no rights as against the husband's creditors by virtue of having subsequently, from the proceeds thereof, purchased furniture for the house. —P. 38.

7. **Appellate Practice—Questions Not Raised Below—Laches.**

The defense of laches is not regarded with favor on appeal when raised there for the first time by the successful party below, since the opposite party should have an opportunity to explain the delay.—P. 38.

8. **Practice in Civil Actions—Fraudulent Conveyances—Action to Set Aside—Condition Precedent—Judgment.**

A creditor is not entitled to maintain a bill to set aside an alleged fraudulent conveyance by his debtor until his claim has been reduced to judgment.—P. 39.

9. **Same—Laches.**

Where, after a fraudulent conveyance of a boarding house to the wife by a husband, the business was run in the same manner as before, and the wife devoted no more time nor money in improving the property and business than she would have done had the title remained in her husband, the delay of a creditor of the husband in recovering judgment and instituting a creditor's suit to set the conveyance aside has not been prejudicial to either the husband or wife, and hence laches is no defense to the bill.—P. 39.

*Appeal from the District Court of the City and County of Denver.*

*Hon. Frank T. Johnson, Judge.*

Action by Hannah E. Helm against Alice M. Brewster and Albert W. Brewster. From a judgment for defendants, plaintiff appeals.

*Reversed and remanded.*

Mr. R. T. McNEAL and Mr. THOS. MACON, for appellant.

Mr. LUTHER M. GODDARD, Mr. TOM HERRINGTON, and Mr. S. C. WARNER, for appellees.

Appellant, as plaintiff, brought an action against appellees, as defendants, to subject certain real property, known as "The Aldine," standing in the name of the defendant, Alice M. Brewster, together with the furniture therein, to the payment of a judgment which plaintiff had obtained against the defendant, Albert W. Brewster. The latter defendant had borrowed a large sum of money from the plaintiff, which was the basis for this judgment. Their relation is that of brother and sister. The defendants are husband and wife. Subsequent to incurring the indebtedness to his sister, Mr. Brewster conveyed the property in question to his wife. This transfer the plaintiff claims was made for the purpose of hindering and delaying her in the collection of her claim against her brother. The main issue between the parties was the *bona fides* of this transaction. The trial resulted in a judgment dismissing the complaint, from which the plaintiff appealed to the court of appeals.

On behalf of the plaintiff it is contended that the testimony bearing on the issues between the parties does not conflict to any material extent, and clearly established that the property in controversy was held by the wife in trust for her husband, while on behalf of the defendants it is claimed that the testimony touching the issues tried was conflicting, and as the facts in issue were found in favor of the defendants, they cannot be disturbed on review; and, further, that the evidence, without regard to its conflict, clearly established the good faith of the transfers from the husband to his wife. It, therefore, becomes necessary to review the testimony.

The defendants were married in 1888. About the time of their marriage, or shortly after, the hus-

band purchased the lots upon which "The Aldine" stands for the sum of ten thousand five hundred dollars, and erected thereon a substantial brick building of six tenements at a cost of about forty thousand dollars. In order to make these improvements he borrowed money at various times, mortgaging the property therefor, which finally culminated in a mortgage for thirty thousand dollars, given in December, 1895, the principal of which was wholly unpaid when plaintiff commenced her action. Between October, 1893, and March, 1896, Mr. Brewster borrowed the money from plaintiff, the indebtedness for which was reduced to judgment in April, 1901. She commenced her action May following. The sum borrowed aggregated six thousand five hundred dollars, part of which has been repaid through the sale of collaterals pledged as security, leaving the balance due for which judgment was rendered in the sum of $4,706.11.

From the time the property was purchased until August, 1894, the defendants, with their children, occupied a brick cottage on one of the lots. From the time the new buildings were completed until the early part of 1894, they were rented to different parties. On this last date they were all rented to one person for the purpose of keeping a boarding house, or family hotel. Part of the furniture used for this purpose belonged to Mr. Brewster, and had cost about three thousand dollars. In August, 1894, he bought out his tenant, paying her for the furniture which she had placed in the property, or allowing her therefor the equivalent of nine thousand six hundred dollars. From that time until September, 1897, Mr. Brewster, with the assistance of his wife, who devoted all her energies in assisting him, conducted the place as a boarding house. On this date he surrendered the business to her, and transferred to her all the furniture in the six houses. The considera-

tion named in the bill of sale evidencing this transaction was one thousand dollars. Thereafter the wife conducted the business. On the 30th of the same month Mr. Brewster conveyed the real estate to his wife. This included the six new buildings and the cottage above mentioned. The new buildings had been improved by the addition of a common dining room. The deed evidencing this transaction names the consideration at twelve hundred dollars. It warrants the title, except as against the mortgage above referred to. It is claimed by the defendants that the wife, as part of the consideration for the transfer, assumed the payment of this mortgage and the interest then due thereon, which amounted to the sum of $1,425. It is also claimed that the wife assumed the payment of other indebtedness against the husband in consideration of the conveyance to her, and has, in fact, discharged such indebtedness, but what the arrangement was between the husband and wife with respect to these matters, or what particular indebtedness she agreed to pay, is not at all clear.

The wife knew that the husband was indebted to the plaintiff and numerous other creditors at the time of the transfers, and that he had no other means with which to pay his debts than the property transferred to her, because his other property was then incumbered for practically all it was worth. At this time his creditors were pressing him for the payment of their claims. By the transfers there was no apparent change in the possession or use and enjoyment of the property other than that the business was thereafter conducted in the name of the wife, whereas, before, it was conducted in the name of the husband. The consideration for the transfer of the furniture and business was a note for $840.00, dated April 8, 1894, executed by the husband to the wife. Defendants testify that the note was given for money

borrowed by the husband from the wife, which she earned by selling cakes to the Woman's Exchange between 1891 and August, 1894. It appears that during this period the family occupied the cottage above mentioned; that the cakes were baked in this cottage; that the family during this time was maintained by the husband, including the hiring and paying of a servant to do the general housework and care for the children; that the materials for the baking were bought by the husband in connection with the family supplies; that during this time the husband had no other business, and received orders for, and delivered, the cakes to the Exchange, and collected the accounts therefor. Occasionally the husband assisted the wife in preparing and baking the cakes. The books of account in connection with this business were kept by the husband in which was entered the cost of materials. This was deducted from the gross receipts for the cakes, and the net proceeds turned over to the wife. The note above mentioned was given for a part of the money thus earned, which the husband claimed to have borrowed from the wife. Part of the money (about six hundred dollars) which the wife claims to have paid the husband on account of the transfer of the real estate in question, she testifies she obtained from her father.

On the question of the value of the real estate there was a conflict in the testimony, some of the witnesses testifying that it was worth from $38,000 to $50,000, while others placed the value at from $25,000 to $35,000. The court ruled that the houses could not be valued separately, but should be estimated as an entire block as transferred. As to the value of the personal property, the court ruled that it must be determined independently of the business in which it was being used, and that its value was only such as it would bring when so sold. On this basis there was

testimony to the effect that its value was about $1,000, while another witness stated that, in connection with the business, it was reasonably worth from $6,000 to $7,000.

It appears from the testimony that the wife paid much more upon indebtedness against the husband than the consideration named in the instruments evidencing the transfers; in fact, paid something like $3,000 more than she agreed to pay, but that she kept no account or memorandum of the amounts or dates of such payments. It also appears from the testimony of the defendant Brewster, that the wife assumed the payment of the taxes on The Aldine; that shortly after the transfer of that property she obtained $490.00 from her father, which she turned over to her husband on account of the consideration of such transfer, which sum he applied upon taxes against The Aldine, which, according to the testimony, she had agreed to discharge. It also appears from the testimony that outside of the money which Mrs. Brewster received from her father, the many obligations against her husband which she discharged were paid out of the proceeds of The Aldine, operated by the wife as a boarding house. Persons whom he owed boarded at the house, and their accounts therefor were applied upon the husband's indebtedness. Some of this indebtedness he had incurred in operating the house prior to the transfer to his wife, and some of it was on account of incumbrances upon his other property.

With respect to his wife furnishing, or paying, him money on account of the transfers, Mr. Brewster states:

"She was to give me money to pay my bills as I needed it; that is, a certain class of indebtedness that was unsecured that I thought I ought to pay as soon as possible. There was no definite amount

named.  It was my understanding that she was to furnish money to pay taxes on other property, and help me save it, and anything I needed for unsecured accounts.''

Prior to these transfers, according to the testimony of Mr. Brewster, he had maintained his family, consisting of his wife and five children, out of the proceeds of The Aldine when operated by him.  Since the transfers the family has been maintained by Mrs. Brewster from the same source.  Mr. Brewster says that since such transfers he has had his living out of the house, and has assisted his wife in running it as much as he thought would pay his way.  He does not appear to have engaged in any other business. The only apparent change after the transfers was, as stated in his own language:  ''She was manager, and I was not.''

Mr. JUSTICE GABBERT delivered the opinion of the court:

The statutes of this state provide that:  ''Every conveyance  *  *  *  of any estate or interest in lands, or in goods, or things in action  *  *  * made with intent to hinder, delay, or defraud creditors of their  *  *  *  demands,  *  *  *  as against the person so hindered, delayed or defrauded, shall be void.''—Mills' Ann. Stats., § 2030.

Many decisions of courts of last resort in actions by creditors of a husband to set aside conveyances of property to his wife are reported, with the result that in this class of cases it has been firmly established that when a conveyance by an insolvent debtor to his wife is attacked by a creditor of the former at the time of such conveyance, the husband and wife are required to clearly establish that the transaction was honest, and that there was no intent to thereby hinder and defraud such creditor.—*First Nat'l*

*Bank v. Kavanach,* 7 Colo. App. 160; *Horton v. Dewey,* 53 Wis. 410; *Livey v. Winton,* 30 W. Va. 554; *Glass v. Zutavern,* 43 Nebr. 334; *Burt v. Timmons,* 29 W. Va. 441; *Seitz v. Mitchell,* 94 U. S. 580.

The reason for the rule is, that the relationship of husband and wife affords exceptional opportunities for the former to defraud his creditors by conveying his property to his wife; and, as they are generally the only persons who know all about transactions between themselves, the rule may be even stronger than we have indicated.

In other cases where creditors have brought suits attacking conveyances by their debtors in fraud of their rights, it is also established that a sale of property, though for a full consideration, made by the owner with intent to hinder, delay or defraud his creditors, is, if the vendee participated in such intent, void as against the creditors of the vendor.— *Reithmann v. Godsman,* 23 Colo. 202; *Clements v. Moore,* 6 Wall. 299; *Bradley v. Ragsdale,* 64 Ala. 558; *Crow v. Beardsley,* 68 Mo. 435.

And that fraud may be inferred from facts and circumstances.—*Grimes v. Hill,* 15 Colo. 359; *Innis v. Carpenter,* 4 Colo. App. 30; *Greenleve v. Blum,* 69 Texas 124.

There is no real conflict in the testimony bearing on the good faith of the transactions between the defendants; and, applying the principles above mentioned to the facts logically deducible from such testimony, the judgment should have been for the plaintiff. At the time the husband transferred the property to his wife he was insolvent, or, at least, greatly embarrassed by indebtedness. The wife knew this fact, and was also aware that his remaining property was so heavily incumbered that his equities therein were of little or no value. The indebtedness to the plaintiff was in existence at the

time of these transfers. The only property which the husband had which was not incumbered was the furniture in the house. It was necessary to protect this from creditors or the business of conducting a boarding house in The Aldine could not be continued. The only business in which the husband was engaged was keeping this boarding house. By transferring The Aldine and the furniture therein, his creditors, except those having liens thereon, would, temporarily, at least, be prevented from reaching that property, and in this way the business could be continued. The only change in the transfer was, that prior thereto the business was conducted in the name of, and managed by, the husband, while thereafter it was conducted in the name of the wife and managed by her. Prior to such transfers the family was supported by the husband from the income derived from operating the boarding house, while thereafter at was supported by the wife from the same source.

If, as contended, the wife, as a part of the consideration of the transfer of the title of The Aldine to her, assumed the payment of the mortgage thereon and taxes then due and unpaid, it is rather strange that in struggling with such a great indebtedness she did not limit her efforts to liquidating it, instead of discharging obligations against her husband to the amount of upwards of three thousand dollars over and above what she had agreed to pay of such indebtedness as part of the consideration of the transfer of the title to her, as he from time to time requested. Or, to use his own language: "She was to give me money to pay my bills as I needed it. * * * There was no definite amount named. It was my understanding that she was to furnish money to pay taxes on other property and help me save it, and anything I needed for unsecured accounts."

Again, we find from the testimony that the wife

kept no account or memorandum of the amounts or dates of the payments she made; that all these payments, except the note and money received from her father, were made with money derived from operating the boarding house, and that there was no definite arrangement between them regarding the amount she was to pay of indebtedness against her husband, which was not a lien upon the property which he had transferred to her. We further find that money which she says she borrowed from her father to pay her husband for his equity in The Aldine, and which she turned over to him, was immediately applied by him in the discharge of taxes against property which, according to their statements, she had agreed to pay. It is apparent, therefore, that the only change by the transfers was, as stated in his own language: "She was manager, and I was not"; and that the purpose of the defendants was to place The Aldine and its furnishings beyond the reach of the creditors of the husband, except those having liens thereon; and that, in fact, there was no sale of the property from the husband to the wife, but a mere transfer of title for the purpose indicated.

The evidence clearly establishes that this is another instance of an insolvent debtor deluding himself with the idea that if he could secure time, he would be able to pay his debts, and, possibly, save a surplus for himself; and, to obtain time, has resorted to the often-tried experiment of conveying his property to his wife, hoping thereby to still retain control thereof, and thus hinder and delay his creditors in the enforcement of their claims, or defeat them in the end.

We think the evidence in this case clearly establishes, without contradiction, that the defendants have not only failed to prove that the transactions between them were honest, and that there was no

purpose to thereby hinder and defraud the creditors
of the husband, but that it establishes a fraudulent
intent upon their part, because it is apparent from
the testimony as a whole, that the property trans-
ferred to the wife was handled, and the proceeds
thereof applied, just as they would have been had
the husband retained the title and continued the busi-
ness in his own name. It is immaterial, therefore,
whether some of the money which the wife paid her
husband was her own, because it appears from all
the facts and circumstances fairly deducible from
the testimony, that it was the purpose of the defend-
ants by the transfers in question to hinder and delay
the creditors of the husband, and hence they are
void, as against his creditors. It is, therefore, not
necessary to determine whether the profits arising
from the baking and sale of cakes belonged to the
wife or the husband, or what amount she may have
received from other sources which she paid to him
on account of such transfers, or whether the consider-
ation she claims to have paid was adequate, for the
reason that as she participated in the fraudulent in-
tent which actuated the transfers, she can take
nothing thereby. In such cases the validity of the
conveyances evidencing sales made in such circum-
stances is determined not by their consideration, but
by the intention with which they were made and ac-
cepted.—*Bigby v. Warnock*, 57 L. R. A. 754. Being
a fraudulent grantee, she cannot set up against the
plaintiff's right of action the amount of money
which she may have paid her husband, because the
rule in such cases is, that the loss of the amount paid
by the fraudulent grantee is the penalty which the
law imposes for the fraudulent transaction. To pro-
tect the grantee in such circumstances would be to
remove all danger of loss, and destroy the salutary

restraint which the law has built up against such transactions.—*Ibid.*

A husband may secure indebtedness to his wife the same as to any other creditor. *Bona fide* transactions between them will be upheld, but when they are not, they will be avoided at the instance of a creditor of the husband, and in circumstances like the case at bar, the husband and wife must show that their transactions were *bona fide*.

The testimony does not establish, as contended by counsel for defendants, that the husband was running behind in operating the boarding house, or that by the transfers in question his wife took over what was, under the management of her husband, a losing business, and by her efforts and superior business qualifications, made it pay. True, he was behind with his interest on The Aldine mortgage and was owing his help, but for aught that appears it was because the proceeds from his business were used in discharging other indebtedness than that incurred in operating the boarding house. It is also claimed on behalf of Mrs. Brewster that the testimony established that she has expended something like $2,500 for furniture placed in the property since the purchase. This, however, is immaterial, in view of the fact that it appears the money thus expended was realized from operating the boarding house, a property and business which, for reasons already given, so far as creditors are concerned, belonged to the husband.

On behalf of the defendants it is urged that the laches of the plaintiff should bar her action. This question does not appear to have been raised in the court below, and a party against whose action laches is suggested as a defense, ought to be allowed to explain it away; and, therefore, it is not regarded with

favor on appeal when raised for the first time by the
successful party below after the case has been
brought to this court for review.—*Hagerman v.
Bates*, 24 Colo. 71. In a recent case—*Mortgage
Trust Co. v. Elliott*, 36 Colo. 238—it is decided, in
effect, that where the defense of laches is not pre-
sented to, nor passed upon by, the trial court, it will
not be considered on appeal, because the party
against whom it is thus first suggested, would be de-
prived of the opportunity to explain his delay.
Plaintiff could not maintain her creditor's bill until
her indebtedness against Mr. Brewster had been re-
duced to judgment. At the time of the transfers it
was not in judgment, but the case at bar was com-
menced shortly after she reduced her claim to judg-
ment. If there had been any delay on the part of the
plaintiff of which defendants might complain, it
arises from the fact that she did not reduce her claim
to judgment at an earlier date, whereby she would
have been enabled to sooner institute her action.
Counsel for plaintiff insist that the time within which
she should have commenced her action only began
to run from the date she obtained judgment against
the defendant Brewster. We do not deem it neces-
sary to pass upon this question. Laches in bringing
an action cannot be successfully interposed as a de-
fense unless delay in this respect has injuriously
affected the party against whom suit is brought, or
his position has been altered to his prejudice
thereby.—*Morgan v. King*, 27 Colo. 539; *Farris v.
Wirt*, 16 Colo. App. 1; *Dubois v. Clark*, 12 Colo.
App. 220.

As previously stated, in substance, in reviewing
the evidence, Mrs. Brewster does not appear to have
expended any money of her own in improving the
property or discharging indebtedness against it.

Whatever she may have expended in either of these ways she obtained from the income derived from operating the property as a boarding house. She has devoted no time to managing the business or in looking after it different from that which she would have done had the title remained in her husband. From the date of the transfers down to the time when plaintiff commenced her action, it appears that the income from the property has been devoted to the support of the family and the discharge of indebtedness against Mr. Brewster, precisely the same as though the property had remained in his name, and he had conducted the boarding house himself; consequently, it is apparent that the delay of the plaintiff in obtaining a judgment and commencing her creditor's suit at an earlier date has not been prejudicial to the rights of the defendants, or either of them.

The judgment of the district court is reversed and the cause remanded, with directions to enter judgment for plaintiff in accordance with the views expressed in this opinion.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE CAMPBELL concur.