THE FIRST NATIONAL BANK OF PUEBLO v. KAVANAGH
ET AL.

1. FRAUD—TRANSACTIONS BETWEEN HUSBAND AND WIFE.

Wherever a conveyance from a husband to his wife is impeached or
attacked, they are ordinarily bound to show in the clearest and
most favorable light an honesty of purpose and an absence of all
intent to hinder or defraud those who may be creditors of the hus-
band at the time of the transaction.

2. SAME.

Parties, whether husband and wife or strangers, have a right to deal
with their property as they please, and no cause of action will arise
in favor of a creditor unless there be something to show that the
thing done was to defraud him or his transferee.

3. SAME—PREFERENCE OF CREDITOR.

A debtor may prefer his creditor, even though the creditor preferred
be his wife.

*Appeal from the District Court of Arapahoe County.*

Messrs. JEROME & HOOD and Mr. CHARLES E. GAST, for
appellant.

Messrs. FELKER & DAYTON, for appellees.

BISSELL, J., delivered the opinion of the court.

No matter of law about which there is any dispute is so
presented by this record as to necessitate either analysis or
discussion.   According to our view of the record, a very
brief statement of the general facts which form the history
of the case will be enough to indicate the basis of our judg-
ment and render the decision intelligible.   The First Na-
tional Bank of Pueblo filed its complaint in February, 1893,
to set aside a certain transfer which had been made by Rod-
erick F. Kavanagh to Ella T., his wife.   The corporate char-
acter of the plaintiff was stated.   The pleading recited the
recovery of two judgments against Roderick for a little more

than $7,800, in September, 1892.  The source of the bank's title is not stated, though probably this is wholly unimportant.  In the summer of 1891, Roderick F. Kavanagh, Henri Vidal, and W. P. Lytle were the owners of a restaurant called the "Tortoni."  It seems to have been run under that name without any formal copartnership sign, and to be owned by the parties according to the interests which they respectively purchased.  In July, Roderick Kavanagh bought Lytle out, and gave him the two notes on which the bank subsequently recovered judgment.  We are not advised as to how long Lytle held them, nor the circumstances which attended their transfer to the bank.  It is charged Kavanagh remained in possession of his entire interest from that time forward until November, 1891, when he made a sale or transfer to his wife, Ella, without any consideration.  It is charged the transaction lacked the elements of good faith, was colorable, and made with the intent to defraud creditors, and that thereby Ella T. acquired no interest in the property. The contents of the bill need not be further stated.  The defendant answered and asserted the good faith of the transaction.  The answer was deemed insufficient, and the defendants amended by a statement in detail of the entire history of the transaction between Roderick and Ella.  From this answer it is generally gathered that when the bill of sale was made by Roderick to his wife in November, 1891, she had his note for $8,500, due in three years, with ten per cent interest, which she surrendered in exchange for Roderick's interest in the property.  The defendants likewise offered evidence tending to show that long prior to this time Mrs. Kavanagh's father and her husband had been interested in the ownership of certain lands in El Paso county and had certain government titles, or evidences of title, to quite a body of land which was ultimately sold to a stranger, William Gaw, who paid about $10,000 for it. These parties testified to the arrangement which was made between Turner, the father, Roderick, the husband, and Ella, whereby a portion of it was to be devoted to the pro-

curement of a home for Mrs. Kavanagh in Denver. The evidence tended to show the purchase of the property on California street, the taking of the title in the husband's name for purposes of convenience, as was stated, and the ultimate transfer of that property to Elitch, who was the owner of the restaurant, for another interest which Roderick held in it at the time he bought from Lytle. What has been stated will indicate very clearly the nature of the transaction, the character of the defense, and the real controversy between the parties.

In cases arising between creditors of the vendor and vendee of personal property, all agree on certain general principles of almost universal applicability, and there is seldom much disagreement respecting their statement or the circumstances which both permit and require their enforcement. To be unimpeachable, the transaction must be characterized by the utmost good faith. We are not concerned with the refined distinctions drawn in those cases which show good faith on the part of the vendee and the want of it on the part of the vendor, wherein it is necessary to inquire about the actual or presumptive knowledge which the vendee may have had of the vendor's purposes. The necessity for the payment of a consideration is well settled. What that consideration must be varies in different jurisdictions. With us a past indebtedness is as good as the present payment of value. The decisions of our own state thus remove what in some forums is an element of exceeding difficulty. Nobody doubts there must be a permanent change of possession unless there be something in the case to take it out of the operation of the rule. Possession by the vendee must not only attend the transfer, but must so continue as to manifest and substantiate an actual sale made in good faith as contradistinguished from a colorable and temporary shifting of custody to lend countenance to what would otherwise be manifestly fraudulent as against a complaining creditor. These various positions are defined by the appellant in a very capable and perspicacious brief. We do not understand

the appellee to controvert any of them. To apply the word a little inaccurately, or at least to divert it from its customary use, the appellee demurs to the argument because the record contains no case which it fits. Before we can make any legitimate use of these principles in the solution of the inquiry, is there error in the record? because the court erroneously applied the law or disregarded it in the decision, we must first ascertain what the facts are. The first error charged which must be found with the appellant to entitle him to a hearing of the other matters is, " the court erred in finding the issues herein in favor of the defendants." Unless we accept this error as well laid, the appellant has no basis on which to rest his discussion. We do not feel the duty put on us to analyze, sift, and weigh the evidence and state our own convictions concerning its sufficiency to support the judgment. The whole case rests on the proof which the defendants produced. It may very well be conceded there were many circumstances in the case which would excite inquiry and raise some suspicion concerning the absolute good faith of the transaction as testified to by the defendants. Wherever, as in this case, the dealings are between husband and wife, whose relations are most intimate and confidential, they are ordinarily bound, whenever a transaction between them is impeached or attacked, to show in the clearest and most favorable light an honesty of purpose and an absence of all intent to hinder or defraud those who may be the creditors of the husband at the time of the transaction. This law is not disputed. It must be remembered, however, in this case the plaintiff offered no proof to impeach the transfer other than what appeared in the general history of the dealings between the husband and his wife, relying on these facts and the inferences which might be drawn from the statements of the defendants. As we understand it, parties, whether they be husband and wife, or whether they be strangers, have a right to deal with their property as they please, and a cause of action will not arise in favor of a creditor unless there be something to show the thing

was done to defraud him or a transferee. Of course, it is true Lytle was a creditor of Kavanagh at the time of this transaction. The notes which represented Lytle's claim ultimately passed into the hands of the bank. But the evidence undoubtedly tended to show an indebtedness existing as between Kavanagh and his wife, which was represented by the note which she held. Doubtless, as between Lytle, Mrs. Kavanagh, and Kavanagh, the husband, had the controversy been between those parties, the husband would have had an absolute right to pay his wife in preference to paying the other creditor, unless there was something to impeach the transaction other than what this record shows. The right of a debtor to pay one creditor in preference to another is always conceded. The only question is whether it was a payment and whether or not the transaction was colorable or in good faith. If Kavanagh was indebted to his wife in the sum of $8,500, and they had so settled the affairs between them, he had a right to pay that note to the exclusion of his other creditors. The only question is, did the transaction amount to a payment or was it a colorable transfer? As we before intimated, we do not feel compelled to support the judgment of the court below by an argument based on the evidence contained in the record, nor do we feel at all constrained to express our opinion concerning it. The case was tried to the court, who saw the witnesses and heard the evidence, and he found the facts against the bank. Under these circumstances, we are quite at liberty to accept his judgment as conclusive on inquiry, and we find nothing in the present case which at all inclines us to depart from this well settled practice and thoroughly established rule.

The judgment of the court was in favor of the defendants on the evidence, and when we accept that conclusion as final there is no error in the record which would justify a reversal of the judgment. For this reason this judgment will be affirmed.

*Affirmed.*