In re Marvin Lee THOMASON, Debtor.

John E. FITZGIBBONS,
Trustee, Plaintiff,

v.

Caryl G. THOMASON, Defendant.

Bankruptcy No. 95–14691 CEM.
Adversary No. 95–1728 RJB.

United States Bankruptcy Court,
D. Colorado.

Nov. 25, 1996.

Garth J. Nicholls, Colorado Springs, CO, for Plaintiff.

Robert J. Mason, Colorado Springs, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER came on for trial on November 19, 1996. At the close of Plaintiff's case in chief Defendant moved for dismissal of the complaint alleging that Plaintiff had failed to put forth a *prima facie* case. The Court took that motion under advisement

and directed that the Defendant put her evidence on the record in order to avoid the possibility that all the parties, counsel, and witnesses might have to return at a later date should the motion be denied.

The Complaint herein is brought by the Trustee in bankruptcy in the case of *In re Marvin Lee Thomason*, Case No. 95–14691 CEM, pursuant to 11 U.S.C. § 544(b) and C.R.S. §§ 38–8–105(1)(a) and (b). The case concerns certain transfers of property between Marvin Lee Thomason ("Debtor") and his wife, Caryl G. Thomason ("Defendant"). The Trustee asserts that these transfers were fraudulent transfers under the Colorado Uniform Fraudulent Transfer Act (C.R.S. §§ 38–8–101, *et seq*).

■ Defendant argues that the Trustee has not proven that he is a "creditor" now or that he was a "creditor" in 1992 when the subject transfers were made. Therefore, the argument goes, the Trustee has failed in his proof. The Bankruptcy Code gives a trustee, as of the date of the filing of the bankruptcy petition, the status of a creditor holding a perfected lien "whether or not such a creditor exists." 11 U.S.C. § 544(a). That section also provides that the trustee may avoid any transfer of property of the debtor that such a hypothetical perfected lien creditor could avoid. Thus the Trustee here is a "creditor" by the operation of law and has the power to exercise any right that a "creditor" could exercise. That includes the right to pursue an action under the Colorado Uniform Fraudulent Transfer Act.

■ Defendant also argues that the Trustee failed to prove actual fraud. The Trustee argues that he does not have to prove such fraud, but that the burden is on the Defendant to disprove the fraud because the transfer was between husband and wife and cites *Erjavec v. Herrick*, 827 P.2d 615 (Colo.App. 1992). The present state statute became effective July 1, 1991, and the parties agree that this present version is the one that applies to this case. The *Erjavec* case, *supra*, although it was decided in 1992, was concerned with the old fraudulent conveyance statute, i.e., C.R.S. § 38–10–117. It is true that under the old statute the case law had developed that when a transfer between

husband and wife was challenged, the husband and wife had to clearly establish that the transaction was honest, made in good faith for a valuable consideration, and that there was no intent to hinder, delay or defraud. See, e.g., *First National Bank v. Kavanagh*, 7 Colo.App. 160, 43 P. 217 (1895), and *Helm v. Brewster*, 42 Colo. 25, 93 P. 1101 (1908). And, appropriately, the *Erjavec* court followed that precedent because the same statute was involved. However, here we have a new statute, which means the legislature must have desired something different than what previously existed. The old statute read as follows:

> 38–10–117. Every conveyance or assignment in writing or otherwise of any estate in lands, goods, or things in action or of any rents and profits issuing thereupon, and every charge made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands, and every bond or other evidence of debt given, suits commenced, or decree or judgment suffered with the like intent as against the person so hindered, delayed, or defrauded shall be void.

From this brief statute there developed considerable case law over the years, including the rule of law discussed *supra*. The new statute is much more comprehensive and to a large degree codifies much of the old case law. It does not, however, codify the rule that shifted the burden of going forward or the burden of proof on the issue of fraudulent intent from the plaintiff creditor to the husband and wife defendants. What it did do in that regard was to provide an extensive list of factors the court could consider in making a determination of "actual intent" which list includes whether or not the transfer was to an "insider." In § 38–8–102(8)(a)(I) an insider is defined as a "relative," and in § 38–8–102(12) a "relative" is defined to include a spouse. And, instead of putting the burden of going forward to prove the "honesty" of the transaction in the first instance, the new statute provides that all transferees, including spouses, have certain specific defenses and protections in § 38–8–109. One of those defenses is that the trans-

feree took the property in good faith and for a reasonably equivalent value. It would make no sense to put the burden of proof on the husband and wife to prove the transfer was honest, in good faith, and for valuable consideration in the first instance when the statute gives them the opportunity to use that same proof as a defense. Thus, I find that under the current state statute, the burden of proof lies with the Plaintiff creditor to prove each and every element of a fraudulent transfer under the statute before the debtor and spouse Defendants must come forward to prove their entitlement to the defense of good faith and reasonably equivalent value.

The Trustee's complaint asserts that there were two fraudulent transfers: (1) the transfer of $8,000 cash from the Debtor to the Defendant in October 1994; and (2) the transfer of a 49% interest in a partnership known as T & S Investments, Ltd. in February 1992. At the close of Plaintiff's case in chief the Plaintiff stipulated to the dismissal of the claim concerning the $8,000 cash transfer. In addition, the parties in their Pre–Trial Statement filed October 30, 1996, stipulated to the following facts:

1. From 1986 to February 28, 1992, Debtor owned a fifty percent (50%) interest in T & S Investments, a Colorado general partnership.

2. T & S Investments owns a commercial building located at 1515 South Tejon Street, Colorado Springs, Colorado.

3. On February 28, 1992, Debtor, by the General Assignment, attached as Exhibit "B" to the Plaintiff's complaint [Plaintiff's Exhibit A at trial], assigned to Defendant, who is his wife, forty-nine (49%) of his fifty percent (50%) partnership interest in T & S Investments.[1]

4. After the Assignment, and as expressly provided in said assignment, the Debtor remained the Managing General Partner of T & S Investments with a one percent (1%) interest.

5. At the time of the Assignment, Debtor was about to or had just engaged in the business known as the Stage Coach Inn Restaurant in Manitou Springs, Colorado.

6. At the time of the Assignment, Debtor's personal residence, located at 1920 Old Stage Road, Colorado Springs, Colorado, was being foreclosed upon.

7. At all times pertinent and [sic] hereto, Debtor has been engaged in the real estate brokerage business. The business is operated under the name of The Great Colorado and Pacific Real Estate Exchange.

8. The principal offices of The Great Colorado and Pacific Real Estate Exchange are located at 1515 South Tejon Street, Colorado Springs, Colorado.

9. The Debtor filed the voluntary petition for relief under Chapter 7 of the Bankruptcy Code on or about May 12, 1995.

The Plaintiff's complaint asserts two different bases to establish a fraudulent transfer under the statute: (a) that the transfer was made with actual intent to hinder, delay, or defraud any creditor of the Debtor [C.R.S. § 38–8–105(1)(a) ]; and (b) that the transfer was made without receiving a reasonably equivalent value in exchange and (I) the Debtor was engaged or about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction[2] or (II) that the Debtor intended to incur or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due. [C.R.S. §§ 38–8–105(1)(b)(I) and (II) ].

 When a motion to dismiss for failure of proof is made at the close of a Plaintiff's case, the Court must indulge in every reasonable inference favorable to the Plaintiff. Under this standard the Court concludes that the Plaintiff had made a *prima facie* case under C.R.S. §§ 38–8–105(1)(a) and (b)(I),

---

1. At trial the Court had the parties clarify exactly what share of the partnership was transferred. They agreed that before the transfer the Debtor owned 50% and after the transfer the Debtor owned 1% and his wife, the Defendant, owned 49%.

2. What is generally called "under capitalization."

but not under (b)(II). There simply was not evidence presented upon which the Court could conclude that the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

The evidence showed that around 1979 the Debtor purchased some real property upon which a restaurant business was being operated, i.e., the Stage Coach Inn ("Inn"). He had a tenant operating the restaurant and was receiving about $50,000 per year in rental income. In August 1991, the tenant orally notified him that he would not exercise an option to renew the lease and that he would vacate the premises at the end of the current term—which was February 1, 1992. The Debtor knew he was in financial trouble without a paying tenant. His personal residence, which was titled jointly with him and his wife, was already in foreclosure since April 1991. His last payment on the mortgage on the Inn was in September 1991. His wife, the Defendant herein, filed a Chapter 13 bankruptcy petition on September 24, 1991. The Debtor testified, and the Defendant agreed, that around the time the tenant of the Inn said he was not going to remain, they agreed that the Debtor could have the Defendant's share of the net sales proceeds of their residence to use in the Inn and in return he would transfer the 49% interest in T & S to her. This agreement was not in writing. But on February 28, 1992, the Debtor did transfer that 49% interest to the Defendant.

Did the Debtor have the "actual intent to hinder, delay, or defraud any creditor" at the time of the transfer? The statute provides in C.R.S. § 38–8–105(2) factors which may be given consideration in making this determination. They are as follows.

1. Was the transfer to an insider? Yes. It was to the Debtor's wife, the Defendant herein.

2. Did the Debtor retain possession or control of the property transferred. Yes. The written assignment specifically provided that he would remain managing general partner.

3. Was the transfer disclosed or concealed? It was concealed. The assignment was never recorded in the public records and it was never revealed to the trustee and creditors of the Defendant in her then still pending Chapter 13 bankruptcy, Case No. 91–22715 CEM. In fact, in a deposition given in that bankruptcy case on January 9, 1992 (less than 60 days prior to the assignment but well after the "agreement" in August, 1991), the Debtor stated he owned that 50% interest and that the value of his interest was $90,000. He never revealed the "agreement" of August 1991. And in 1993 when the Debtor and his other partner (Mr. Sterling) renegotiated the T & S loan on the building it owned, only the Debtor and Sterling signed the documents and personal guarantees. The documents fail to show the Defendant as an owner.

4. Had the Debtor been sued or threatened with suit before the transfer? Yes. His residence was in foreclosure, he was in default on the mortgage for the Inn, and he had been sued by another entity known as the Credit Center.

5. Was the transfer one of substantially all of the Debtor's assets? At the close of the Plaintiff's case in chief the Court was unable to decide with any certainty whether or not partnership interest comprised "substantially" all of the Debtor's assets.

6. Did the Debtor abscond? No.

7. Did the Debtor conceal or remove assets? No.

8. Was the value of the consideration received by the Debtor the reasonable equivalent of the value of the T & S interest? No. As stated, *supra*, in a deposition taken in January 1992 the Debtor claimed a value of that interest at around $90,000. In discovery produced in this adversary proceeding he admitted the value of that interest was around $87,500 in 1992. He tried to hedge that testimony by playing semantic games which this Court does not accept. When the Debtor and the Defendant did sell their residence on September 1, 1992, the sales price was $200,000, and after payment of all closing costs and liens, they received a net of $11,924.00. See Plaintiff's Exhibit K. They owned the house jointly, and therefore, their individual shares of that would have been

$5,962. That means that the T & S interest (the 49%) he transferred was worth $88,200 to $85,750. In exchange he received the Defendant's share of the sale of the residence, or only $5,962. The Defendant tried to assert that the closing statement (Exhibit K) was really in error because it shows a $20,000 broker's fee to Great Colorado and Pacific Real Estate Exchange that was put in the statement "just for tax purposes." They did that so when he and his wife "reinvested" in a new house they would only have to invest in a house valued at $180,000 instead of $200,000 in order to roll over their equity and delay payment of any capital gain tax and because Great Colorado had some tax losses that could be applied shield to the $20,000 from income taxes. So often over the fourteen plus years this judge has been on the bench, similar statements have been made by other litigants. And they have been made with an apparent complete lack of conscience that anything improper has been done. What they are saying is that they have perpetrated a tax fraud by indicating certain facts in documents that are not true, and they know they are not true, in order to lower their tax liability. People seem to have the idea that it's all right to lie to avoid the payment of taxes. But then when that lie would hurt them before this Court, they "come clean" and testify as to the "true" facts. This Court doesn't buy it. If in 1992 they signed a document stating that the $20,000 was a legitimate broker's fee and they only received a net of $11,924, then they must live with that statement today.

9. Was the Debtor insolvent or did he become insolvent shortly after the transfer was made? C.R.S. § 38–8–103(1) specifies that a debtor is insolvent if the sum of his debts is greater than all of his assets at a fair valuation. Again, at the close of the Plaintiff's case in chief, the Court was unable to make this determination as to the sum of the Debtor's debts and the value of all of his assets. However, § 38–8–103(2) provides that a debtor who is generally not paying his debts as they become due is presumed to be insolvent. The Plaintiff had made a *prima facie* case in this regard. The Debtor had not made a payment on the mortgage on the Inn since September 1991, his house had been in foreclosure since April 1991, and the Defendant, his wife, had filed for bankruptcy in September 1991 for the express purpose of delaying the house foreclosure.

10. Did the transfer occur shortly before or shortly after a substantial debt was incurred? Yes. The Debtor testified that in an effort to save his investment in the Inn he personally took over the actual day-to-day operation of the restaurant—an endeavor for which he had absolutely no training or experience. He had arranged in late 1991 with the lender on the Inn to "forebear" (his last payment was September 1991) while he tried to make a go of the restaurant or until he sold the restaurant. That necessarily meant that substantial interest was accruing. At the meeting of creditors in his bankruptcy case held on July 3, 1995, he admitted that when he started to operate the restaurant he was "under capitalized." Eventually, in August 1993, he lost the Inn property in foreclosure. He had filed a Chapter 13 bankruptcy petition March 3, 1993, in an effort to delay this foreclosure.

Based on the foregoing, the Court concludes that the Plaintiff had made a *prima facie* case that transfer of the T & S interest by the Debtor to the Defendant was made with the actual intent to hinder, delay, or defraud the Debtor's creditors under C.R.S. § 38–8–105(1)(a). Further, because the statute provides for "any" creditor, the Trustee falls into that category pursuant to 11 U.S.C. § 544. In addition, the Court finds that the Plaintiff established a *prima facie* case under C.R.S. § 38–8–105(1)(b)(I) because the Debtor received far less than a reasonably equivalent value in exchange for the transfer and he was engaged or was about to engage in a business (the Inn restaurant) which he admitted was under capitalized. Therefore, the Motion to Dismiss made by the Defendant at the close if Plaintiff's case in chief must be denied.

The only substantial evidence presented by the Defendant was that the Debtor and the Defendant also owned a real estate lot in South Dakota which was also in foreclosure at the time of the transfer of the T & S interest to the Defendant. The evidence

tended only to further elaborate upon the facts already put forth in Plaintiff's case. In fact, the Defendant failed to show that she was a good faith transferee or that she gave a reasonably equivalent value in exchange for the transfer. Both she and her husband testified that the purpose was to preserve some assets for her because he had been losing everything else. The Debtor even testified that the Defendant was against his taking over the restaurant business because he had no experience and that if she gave up the equity in their house, she wanted something left for her. The implication is, therefore, that their joint intent was to shield the T & S interest from the Debtor's creditors and preserve it for the Defendant. In any event, even if the transfer was in good faith, it was not for a reasonably equivalent value and both good faith and value must be proven in order for the defense to apply.

In a trial brief filed by the Defendant, the issue of the statute of limitations is raised. The transfer here was made February 28, 1992. This action was filed November 27, 1995. Under C.R.S. §§ 38–8–110(1)(a) and (b), an action pursuant to §§ 38–8–105(1)(a) or (1)(b) must be brought within fours years of the transfer. This case was filed within the four-year statute of limitations. It is, therefore,

ORDERED that the judgment of dismissal shall enter in favor of the Defendant, Caryl G. Thomason, and against the Plaintiff, John E. Fitzgibbons, Trustee, on the alleged transfer of $8,000 on or about October, 1994. It is

FURTHER ORDERED, ADJUDGED AND DECREED that judgment shall enter in favor of the Plaintiff, John E. Fitzgibbons, Trustee, and against the Defendant, Caryl G. Thomason, that the transfer of the interest in T & S Investments, Ltd. represented by that certain conveyance from Marvin L. Thomason dated February 28, 1992, is declared null and void and that said interest in T & S Investments, Ltd. is property of the bankruptcy estate in the case of *In re Marvin Lee Thomason,* Case No. 95–14691 CEM now

pending in the U.S. Bankruptcy Court for the District of Colorado.